# Supreme Court of Wisconsin

| | |
|---|---|
| CASE NO.: | 2023AP533 |

| | |
|---|---|
| COMPLETE TITLE: | In the matter of the mental commitment of M.A.C.: |
| | Waukesha County,<br>      Petitioner-Respondent,<br>    v.<br>M. A. C.,<br>      Respondent-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 409 Wis. 2d 95
(2023 – unpublished)

| | |
|---|---|
| OPINION FILED: | July 5, 2024 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 20, 2024 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | Laura F. Lau |

JUSTICES:
PROTASIWEICZ, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a concurring opinion. REBECCA GRASSL BRADLEY, J., filed an opinion concurring in part and dissenting in part. ZIEGLER, C.J., filed a dissenting opinion.
NOT PARTICIPATING:

ATTORNEYS:

For the respondent-appellant-petitioner, there were briefs filed by *Colleen Marion*, assistant state public defender. There was an oral argument by *Collen Marion*, assistant state public defender.

For the petitioner-respondent there was a brief filed by *Zachary M. Bosch*, assistant corporation counsel. There was an oral argument by *Zachary M. Bosch*, assistant corporation counsel.

An amicus curiae brief was filed by *Andrew T. Phillips*, *Matthew J. Thome*, and *Attolles Law, S.C., Milwaukee*, on behalf of Wisconsin Counties Association.

An amicus curiae brief was filed by *Katie R. York*, deputy state public defender, *Faun M. Moses*, appellate division director, on behalf of Office of the State Public Defender.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2023AP533
(L.C. No. 2020ME243)

STATE OF WISCONSIN : IN SUPREME COURT

In the matter of the mental commitment of
M.A.C.:

**Waukesha County,**

Petitioner-Respondent,

v.

**M. A. C.,**

Respondent-Appellant-Petitioner.

**FILED**

**JUL 5, 2024**

Samuel A. Christensen
Clerk of Supreme Court

PROTASIWEICZ, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a concurring opinion. REBECCA GRASSL BRADLEY, J., filed an opinion concurring in part and dissenting in part. ZIEGLER, C.J., filed a dissenting opinion.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 JANET C. PROTASIEWICZ, J. M.A.C. was involuntarily committed in Waukesha County in 2020. Two years later, the County sought to extend M.A.C.'s commitment, and the Waukesha County Circuit Court scheduled a recommitment hearing. But the

County was not able to contact M.A.C. in the weeks leading up to the hearing, and we have no evidence that M.A.C. knew about the hearing. On the day of the hearing, M.A.C. did not appear. M.A.C.'s appointed counsel was present, but she had been unable to contact M.A.C. The circuit court found M.A.C. in default and ordered that she be recommitted and involuntarily medicated.

¶2 M.A.C. challenges the recommitment and involuntary medication orders on three grounds. First, she argues that an individual subject to commitment has a right to notice of recommitment and involuntary medication hearings. Second, she asserts that default judgment is unavailable in those hearings. Third, she says that the County failed to provide sufficient evidence that she should be involuntarily medicated.

¶3 We agree with M.A.C. on all three grounds. We hold that (1) under our statutes a subject individual is entitled to notice of recommitment and involuntary medication hearings—notice to counsel only is not enough, (2) our statutes do not allow default judgment at those hearings, and (3) the County provided insufficient evidence for M.A.C.'s involuntary medication. We overrule the contrary holdings of Waukesha County v. S.L.L., 2019 WI 66, 387 Wis. 2d 333, 929 N.W.2d 140. Accordingly, we reverse the court of appeals.

I. BACKGROUND

¶4 Under chapter 51, a court may order involuntary commitment for a person with a mental illness who is dangerous and a proper subject for treatment. See Wis. Stat.

2

§ 51.20(1)(a)1.-2. (2021-22).[1]  An initial commitment may last at most six months, but a county may petition to extend the period of commitment.[2]  See § 51.20(13)(g)1., 2r.  If a county petitions for an extension, the circuit court must hold a hearing where the county bears the burden to prove that the commitment should be extended.  See § 51.20(13)(g)3. (requiring recommitment courts to follow the hearing procedures in § 51.20(10) to (13)).  If the county meets its burden at that hearing, a court may extend commitment for up to twelve months.  § 51.20(13)(g)1.

¶5  In a separate but closely related procedure, a court may order that a person be involuntarily medicated.  See Wis. Stat. § 51.61(1)(g)3.  Under the procedure relevant to this case, the court must hold a hearing before ordering involuntary medication.  See § 51.61(1)(g)3., 4.  At that hearing, the county bears the burden to prove that the person is incompetent to refuse medication by clear and convincing evidence. Outagamie County v. Melanie L., 2013 WI 67, ¶37, 349 Wis. 2d 148, 833 N.W.2d 607.

¶6  M.A.C. has mental health disorders and was committed in Waukesha County in 2020.  At that time, the court ordered outpatient commitment and involuntary medication.  The court extended her commitment twice, and during the period relevant to

---

[1] All subsequent references to the Wisconsin Statutes are to the 2021-22 version.

[2] In chapter 51, the legislature uses the terms "recommitment" and "extension of commitment" interchangeably. See Portage County v. J.W.K., 2019 WI 54, ¶1 n.1, 386 Wis. 2d 672, 927 N.W.2d 509.  We do the same here.

3

this appeal, M.A.C. was subject to her second extension of commitment. That one-year extension began on August 31, 2021, and was scheduled to expire on August 31, 2022.

¶7 Throughout that year, M.A.C. was homeless. She was taking three medications, one of which required injection. She had appointments to receive medication with the county health department. She missed some of her scheduled appointments, and on multiple occasions, the department sought orders for M.A.C. to be taken into custody for injection.[3] The department also reports that M.A.C. refused temporary housing during this time.

¶8 On July 19, 2022——43 days before the commitment would expire——the County filed a Petition for Recommitment, recommending an extension of commitment. The petition listed M.A.C.'s address as: "Homeless, please send documents to her Case Manager." The County attached an Extension of Commitment Report signed by M.A.C.'s case worker.

¶9 That same day, the circuit court issued a Notice of Hearing for M.A.C.'s recommitment hearing.[4] According to the distribution list, the notice was to be sent to the County's corporation counsel, M.A.C.'s case worker, and M.A.C. But M.A.C.'s address was listed as "Homeless."

---

[3] See Wis. Stat. § 51.20(13)(dm) (allowing a treatment facility director to request that the individual be taken into custody for medication).

[4] The Honorable Laura F. Lau of the Waukesha County Circuit Court presided over M.A.C.'s recommitment hearing.

¶10 The court's hearing notice also addressed appointment of counsel. M.A.C. did not have counsel appointed for the recommitment hearing at the time the notice was issued. The notice instructed M.A.C. that "[an] attorney will be appointed to represent you." Two days later, on July 21, 2022, the State Public Defender (SPD) appointed counsel to represent M.A.C. for her recommitment hearing.[5]

¶11 Additionally, the court's hearing notice discussed court-appointed examination. The court appointed two doctors to examine M.A.C.——Dr. Cary Kohlenberg and Dr. Peder Piering. The notice instructed M.A.C. to contact those doctors to set up an examination. In its order appointing the examiners, the court notified the doctors that M.A.C. was currently located at "Homeless, please send documents to her Case Manager."

¶12 Three weeks later, on August 9, another notice was filed. This notice——a Notice of Extension of Commitment Hearing and Witnesses——was filed by the County. The County addressed the notice to the "State Public Defender Office" and M.A.C. M.A.C.'s address was listed as "Homeless C/O Danielle Weber, Case Manager." The notice listed three potential witnesses for

---

[5] In this opinion, we refer to M.A.C.'s "appointed counsel." Though SPD did appoint counsel to represent M.A.C., we have no evidence that M.A.C. ever spoke with this attorney. See In re Disciplinary Proceedings Against Kostich, 2010 WI 136, ¶16, 330 Wis. 2d 378, 793 N.W.2d 494 ("[T]he existence of a lawyer/client relationship is determined principally by the reasonable expectations of the person seeking the lawyer's advice.").

the recommitment hearing: M.A.C.'s case manager and the two court-appointed doctors.

¶13 In the days leading up to the hearing, both court-appointed doctors filed examination reports. Neither spoke with M.A.C. while preparing the examination report.

¶14 Dr. Kohlenberg completed his evaluation "solely per review of collateral information." That collateral information included the Extension of Commitment Report authored by M.A.C.'s case worker, past commitment and recommitment reports, medical records from 2020, and a conversation with M.A.C.'s case worker.

¶15 Despite never speaking to M.A.C., Dr. Kohlenberg opined on M.A.C.'s fitness for commitment and involuntary medication. When asked which particular medications Dr. Kohlenberg discussed with M.A.C. and which advantages, disadvantages, and alternatives they discussed, Dr. Kohlenberg answered "N/A."[6] Still, he opined that due to her mental illness, M.A.C. was "incapable of applying an understanding of the advantages, disadvantages and alternatives in order to make an informed choice as to whether to accept or refuse psychotropic medication."[7]

---

[6] To prove incompetence to refuse medication, a county must show that "the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual." Wis. Stat. § 51.61(1)(g)4.; Outagamie County v. Melanie L., 2013 WI 67, ¶67, 349 Wis. 2d 148, 833 N.W.2d 607.

[7] This language is substantially the same as the incompetence standard found in Wis. Stat. § 51.61(1)(g)4.b.

¶16 The second examiner, Dr. Piering, also filed a report. He indicated that M.A.C. "could not be contacted in order to complete the evaluation." Dr. Piering did not indicate where he got the information he included in his report, but he included information on M.A.C.'s treatment and well-being from 2020 to 2022. When asked which particular medications Dr. Piering discussed with M.A.C. and which advantages, disadvantages, and alternatives they discussed, Dr. Piering answered "NA." Dr. Piering indicated that due to her mental illness, M.A.C. was incapable of applying an understanding of the advantages, disadvantages, and alternatives.

¶17 On August 16, 2022, the Court held a recommitment hearing. M.A.C. did not appear. M.A.C.'s appointed counsel was present, but she had not spoken with M.A.C. The appointed counsel explained that both she and M.A.C.'s case worker had been trying to reach M.A.C. In particular, counsel said that M.A.C.'s case worker had "been trying . . . hard to find" M.A.C. In explaining M.A.C.'s non-appearance, counsel offered that M.A.C. had recently witnessed a traumatic event involving her partner.

¶18 In M.A.C.'s absence, the court asked how to resolve the hearing. Counsel for both sides proposed dispositions. The County asked for a default judgment and suggested that a

detention order would not be appropriate.[8] The County asked for the court to "rely upon the doctor reports" to make factual findings and order recommitment. M.A.C.'s appointed counsel said she had "no direction" from M.A.C. and "didn't know [M.A.C.'s] position." Counsel did suggest that M.A.C. would likely not want to be detained. Counsel said she was "not in a position to object" to the County's proposed factual findings.

¶19 In the end, the court found M.A.C. in default. In doing so, the circuit court made findings "[b]ased upon the doctors' reports and [M.A.C.]'s failure to appear." It also found that "[M.A.C.] appeared today by counsel." Ultimately, the circuit court determined that M.A.C. met the conditions for continued commitment because she was mentally ill, a proper subject for treatment, and dangerous.[9]

¶20 As for involuntary medication, the court found that "[t]he advantages, disadvantages, and alternatives to medication [had] been explained" to M.A.C. The court also concluded that M.A.C. was not capable of making an informed choice to refuse

---

[8] A circuit court may issue a detention order when a subject individual fails to appear for a hearing under Wis. Stat. § 51.20(10)(d). Under that statute, the court issues a warrant so the subject individual may be arrested, detained, and brought before the court for a hearing. § 51.20(10)(d).

[9] Specifically, the court found that there was "a substantial likelihood based on her treatment record that she would be a proper subject for commitment if treatment were withdrawn." See Wis. Stat. § 51.20(1)(am). The court said that without treatment there would be "[a] substantial probability of physical impairment or injury to herself due to impaired judgment." See § 51.20(1)(a)2.c.

medication because "due to mental illness" she was "substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives of her condition."

¶21 The court thus ordered involuntary medication and a 12-month extension of commitment. M.A.C. appealed. On appeal, M.A.C. argued that: (1) the County should have provided notice of the hearing to M.A.C. under Wis. Stat. § 51.20(10)(a) and as a matter of due process, (2) the circuit court improperly granted a default judgment, and (3) the County presented insufficient evidence for the court to order recommitment and involuntary medication.

¶22 The court of appeals affirmed, upholding the circuit court's orders. See Waukesha County v. M.A.C., No. 2023AP533, unpublished slip op. (Wis. Ct. App. July 28, 2023). In its decision, the court of appeals relied heavily on S.L.L. See 387 Wis. 2d 333. For each of the first two issues M.A.C. raised——notice and default judgment——the court of appeals emphasized that it was "bound by S.L.L." See M.A.C., No. 2023AP533, at ¶¶13-15. As for the sufficiency-of-the-evidence argument, the court found that M.A.C. forfeited her claim by failing to object to the County's evidence in circuit court. See id., ¶¶20-23. Here, we review the court of appeals' decision.

## II. DISCUSSION

¶23 In this decision, we address three interrelated issues. First, we examine the requirement of notice, addressing both recommitment and involuntary medication hearings in turn. Then we consider default judgment, again examining its

9

availability in both recommitment and involuntary medication hearings in turn. Finally, we take up the sufficiency of the evidence for the involuntary medication order.

### A. Notice

¶24 The parties dispute whether providing notice to counsel is sufficient to provide notice to a subject individual. M.A.C. argues that notice to the subject individual is required while the County argues that providing notice to counsel is sufficient. We agree with M.A.C. that our statutes require notice to the subject individual——notice to counsel only is not sufficient.[10]

¶25 In coming to this conclusion, we must interpret statutes. Statutory interpretation is a question of law that we review de novo. Greenwald Fam. Ltd. P'ship v. Village of Mukwonago, 2023 WI 53, ¶14, 408 Wis. 2d 143, 991 N.W.2d 356. When we interpret statutes, we "begin[] with the language of the statute." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). And we are "not at liberty to disregard the plain, clear words of the statute." Id., ¶46 (quoted source omitted). We consider the language of the statute "in the context in which

---

[10] The parties also dispute whether notice to the subject individual is required by due process. We do not address that argument because we determine that notice is required by statute. See County of Milwaukee v. Williams, 2007 WI 69, ¶63, 301 Wis. 2d 134, 732 N.W.2d 770 (counseling that courts "should not reach a constitutional question unless it is essential to the determination of the case").

it is used" and "in relation to the language of surrounding or closely-related statutes." Id. "If the text of the statute is plain and unambiguous, our inquiry may stop there." Greenwald, 408 Wis. 2d 143, ¶16.

¶26 In addition, we must consider stare decisis. This court has said that "respect for prior decisions is fundamental to the rule of law." Johnson Controls, Inc. v. Emps. Ins. of Wausau, 2003 WI 108, ¶94, 264 Wis. 2d 60, 665 N.W.2d 257. Therefore, we require a "special justification" to overrule a prior decision. Id., ¶96. We have identified five special justifications.[11] State v. Johnson, 2023 WI 39, ¶20, 407 Wis. 2d 195, 990 N.W.2d 174.

### 1. Notice and Recommitment

¶27 We first address notice in the context of recommitment hearings. In chapter 51, our legislature included a provision about notice for recommitment hearings. See Wis. Stat.

---

[11] Those justifications are:

(1) the law has changed in a way that undermines the prior decision's rationale; (2) there is a "need to make a decision correspond to newly ascertained facts;" (3) our precedent "has become detrimental to coherence and consistency in the law;" (4) the decision is "unsound in principle;" or (5) it is "unworkable in practice."

State v. Johnson, 2023 WI 39, ¶20, 407 Wis. 2d 195, 990 N.W.2d 174 (quoting State v. Young, 2006 WI 98, ¶51 n.16, 294 Wis. 2d 1, 717 N.W.2d 729).

11

§ 51.20(10)(a).[12]  We begin with the provision's text.  In relevant part, the legislature states "the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing."  Id.[13]  In setting out the notice requirement, the legislature used the conjunctive word "and," as opposed to the disjunctive word "or."  See id. (requiring notice for "the subject individual and his or her counsel" (emphasis added)).

¶28  We take the legislature at its word——the statute says the County must notify "the subject individual and his or her counsel."  Id. (emphasis added).  Thus, the County must provide notice to both the subject individual and her counsel.  See Saint John's Cmtys., Inc. v. City of Milwaukee, 2022 WI 69, ¶17

---

[12] Subsection 51.20(10) governs hearings for both initial commitments and recommitments.  In Wis. Stat. § 51.20(13)(g)3., the legislature mandates that "[u]pon application for extension of a commitment . . . the court shall proceed under subs. (10) to (13)."

[13] In full, Wis. Stat. § 51.20(10)(a) says:

Within a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing. The court may designate additional persons to receive notice of the time and place of the final hearing. Within a reasonable time prior to the final hearing, each party shall notify all other parties of all witnesses he or she intends to call at the hearing and of the substance of their proposed testimony. The provision of notice of potential witnesses shall not bar either party from presenting a witness at the final hearing whose name was not in the notice unless the presentation of the witness without notice is prejudicial to the opposing party.

& n.8, 404 Wis. 2d 605, 982 N.W.2d 78 (employing the "conjunctive/disjunctive canon" to read "and" as requiring "both").

¶29 We find further support for the conclusion that the subject individual is entitled to notice by looking at the rest of § 51.20. Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used [and] in relation to the language of surrounding or closely-related statutes."). In § 51.20, the legislature says that subject individuals "and" their attorneys must receive notice four times.[14] Specifically, both subject individuals and their attorneys must be provided notice for probable cause hearings, final hearings, reexamination hearings, and "all proceedings under this section."[15] This repetition suggests that the legislature meant for notice to be provided to both subject individuals and their attorneys under § 51.20.

---

[14] See Wis. Stat. § 51.20(2)(b) ("The individual who is the subject of the petition, his or her counsel and, if the individual is a minor, his or her parent or guardian, if known, shall receive notice of all proceedings under this section." (emphasis added)); id. ("The notice of time and place of a hearing shall be served personally on the subject of the petition, and his or her attorney, within a reasonable time prior to the hearing to determine probable cause for commitment." (emphasis added)); 51.20(10)(a) (requiring notice of final hearings to "the subject individual and his or her counsel" (emphasis added)); 51.20(16)(g) (mandating that courts provide notice of reexamination hearings to the petitioner——i.e., the subject individual under § 51.20(16)(a)——and legal counsel).

[15] See the sources cited in the preceding footnote.

13

¶30 Thus, under the plain text of Wis. Stat. § 51.20(10)(a), the petitioner must provide notice to the subject individual.[16] And "[i]f the text of the statute is plain and unambiguous, our inquiry may stop there." Greenwald, 408 Wis. 2d 143, ¶16. However, the County would have us go a step further. The County argues that even if § 51.20(10)(a) says who must receive notice——both the individual and counsel——it does not say how those people must receive notice.

¶31 Therefore, the County argues, we should look to the rules of civil procedure to determine how the individual must be given notice. See § 51.20(10)(c) ("Except as otherwise provided in this chapter, the rules of . . . s. 801.01(2) apply to any judicial proceeding or hearing under this chapter."). And the rules of civil procedure allow serving counsel rather than serving the party that counsel represents. See Wis. Stat. § 801.14(2) ("Whenever . . . service of pleadings and other papers is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party in person is ordered by the court."). Thus, the County argues it can meet its

---

[16] M.A.C. also argues that a separate subsection——Wis. Stat. § 51.20(2)(b)——requires notice to the subject individual for recommitment hearings. Here, we focus on the notice requirement under § 51.20(10)(a), which indisputably applies to recommitment. See § 51.20(13)(g)3. Accordingly, we do not address whether subsections besides (10) to (13) apply to recommitment.

14

requirement to notify both the subject individual and her counsel by serving only counsel.

¶32 We disagree. We do not need to look to the general rules of civil procedure where the legislature provided a specific procedure in chapter 51. The legislature incorporated the rules of civil procedure into chapter 51 with a condition: The rules of civil procedure apply "[e]xcept as otherwise provided in [chapter 51]." Wis. Stat. § 51.20(10)(c). Similarly, the civil rules contain a self-limitation——they apply "except where different procedure is prescribed by statute or rule." Wis. Stat. § 801.01(2). And here, the legislature did prescribe a procedure for notice in chapter 51. The legislature said counties must notify "the subject individual and his or her counsel." Wis. Stat. § 51.20(10)(a). We decline to reach outside of chapter 51 where the legislature included a procedure within chapter 51 that covers the subject.

¶33 This is not the first time we have addressed notice requirements for recommitment hearings. In S.L.L., we held that "notice to . . . counsel was sufficient" under our statutes. 387 Wis. 2d 333, ¶¶27-28. That holding was unsound in principle, and we overrule it. See Johnson, 407 Wis. 2d 195, ¶20 (precedent may be overruled when it is "unsound in principle").

¶34 Our prior holding was unsound because the S.L.L. court did not adequately address the plain text of Wis. Stat. § 51.20(10)(a). When we interpret statutes, we must "begin[] with the language of the statute." Kalal, 271 Wis. 2d 633, ¶45

15

(quoted source omitted). And we are "not at liberty to disregard the plain, clear words of the statute." Id., ¶46 (quoted source omitted). Accordingly, we have considered a prior interpretation of a statute to be "unsound in principle" when the precedential case "did not attempt to undertake a comprehensive examination of" a statute and failed to consider a relevant subsection. State v. Denny, 2017 WI 17, ¶70, 373 Wis. 2d 390, 891 N.W.2d 144.

¶35 Such was the case in S.L.L. Importantly, the parties in S.L.L. did not argue that paragraph (10)(a) mandates notice to the subject individual. See 387 Wis. 2d 333, ¶27 n.18 (stating that the argument was "not adopted by any party"). Instead, the petitioner in S.L.L. "concentrated solely on" a different provision——Wis. Stat. § 51.20(2)(b)——to argue that notice is required. Id. Consequently, the S.L.L. court addressed § 51.20(10)(a) only in response to the dissent and only in a footnote. See id. In that footnote, the court reasoned that it would be a "difficult task" to "read[] a personal-service mandate" into § 51.20(10)(a). We disagree, for the reasons stated above. And the court's reasoning was unsound because it failed to adequately consider the text of the statute. See Kalal, 271 Wis. 2d 633, ¶46 ("In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute."); Denny, 373 Wis. 2d 390, ¶70.

16

¶36 We hold that under our statutes, a petitioner must provide notice of a recommitment hearing to the subject individual and providing notice to counsel only is not enough.

### 2. Notice and Involuntary Medication

¶37 M.A.C. argues next that notice to the subject individual is required for involuntary medication hearings. We agree.

¶38 In Wis. Stat. § 51.61(1)(g)3., our legislature identified parties that must be notified of a motion for involuntary medication. Specifically, it said a court may order involuntary medication only "with notice of the motion to the individual's counsel, if any, the individual and [corporation counsel]." § 51.61(1)(g)3.[17] Just as in Wis. Stat. § 51.20(10)(a), the legislature uses the word "and" in Wis.

---

[17] In relevant part, Wis. Stat. § 51.61(1)(g)3. says:

Following a final commitment order, other than for a subject individual who is determined to meet the commitment standard under s. 51.20 (1) (a) 2. e., have the right to exercise informed consent with regard to all medication and treatment unless the committing court or the court in the county in which the individual is located, within 10 days after the filing of the motion of any interested person and with notice of the motion to the individual's counsel, if any, the individual and the applicable counsel under s. 51.20 (4), makes a determination, following a hearing, that the individual is not competent to refuse medication or treatment or unless a situation exists in which the medication or treatment is necessary to prevent serious physical harm to the individual or others. . . . The hearing under this subdivision shall meet the requirements of s. 51.20 (5), except for the right to a jury trial.

17

Stat. § 51.61(1)(g)3. The word "and" indicates that both the individual and counsel must be notified. See Saint John's, 404 Wis. 2d 605, ¶17 & n.8 (employing the "conjunctive/disjunctive canon" to read "and" as requiring "both"). The statute is plain and unambiguous——the subject individual must be notified upon a motion for involuntary medication. So, we "stop there." Greenwald, 408 Wis. 2d 143, ¶16.[18]

¶39 We hold that under our statutes, a subject individual is entitled to notice of an involuntary medication hearing and notice to counsel only is not sufficient.

* * *

¶40 Here, all parties agree that the County did not contact M.A.C. between the time it filed the petition for recommitment and the August 16, 2022 hearing. The County contacted M.A.C.'s appointed counsel only, and we have no evidence that M.A.C. knew of the hearing. Thus, M.A.C. did not receive the requisite notice of her recommitment and involuntary medication hearing.

## B. Default Judgment

¶41 The parties also dispute whether default judgment is available at recommitment and involuntary medication hearings. We conclude that default judgment is not available at recommitment hearings or at involuntary medication hearings.

---

[18] We note that the S.L.L. court did not discuss involuntary medication and did not cite Wis. Stat. § 51.61 in its opinion. See 387 Wis.2d 333.

18

¶42 Here again, we interpret statutes under a de novo standard. Greenwald, 408 Wis. 2d 143, ¶14. We also consider stare decisis. See Johnson, 407 Wis. 2d 195, ¶20 (identifying special justifications for overruling precedent). In addition, we must review the circuit court's entry of a default judgment. In the context of a default judgment, we review for an erroneous exercise of discretion. Shirk v. Bowling, Inc., 2001 WI 36, ¶9, 242 Wis. 2d 153, 624 N.W.2d 375. A circuit court erroneously exercises its discretion if it makes "an error in law." State v. Ford, 2007 WI 138, ¶28, 306 Wis. 2d 1, 742 N.W.2d 61.

1. Default Judgment and Recommitment

¶43 We begin by considering default judgment in the context of recommitment hearings. Default judgment is "the ultimate sanction" and "[t]he law prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues." Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc., 2002 WI 66, ¶64, 253 Wis. 2d 238, 646 N.W.2d 19.

¶44 The legislature did not include a default judgment provision in chapter 51. But it did provide a tool for circuit courts to use when a subject individual fails to appear for a recommitment hearing. In Wis. Stat. § 51.20(10)(d),[19] the legislature said: "In the event that the subject individual . . . fails to appear for the final hearing the court may issue an order for the subject individual's

---

[19] Again, subsection (10) applies to recommitment under Wis. Stat. § 51.20(13)(g)3.

detention . . . ." If the court orders detention, it "shall hold the final commitment hearing within 7 days from the time of detention." Id.

¶45 So a circuit court clearly has one option when a subject individual fails to appear for a recommitment hearing——issuing a detention order. The parties disagree about what other tools are available. M.A.C. argues that the detention order is the outer limit on the court's power, while the County suggests that the circuit court can go further than detention and enter a default judgment.

¶46 We agree with M.A.C. that the detention order is the outer limit on the circuit court's power. If a subject individual fails to appear for a hearing, a court may take evidence about the cause of the nonappearance. Cf. Waukesha County v. E.J.W., 2021 WI 85, ¶35, 399 Wis. 2d 471, 966 N.W.2d 590 (allowing a circuit court to "evaluate the circumstances under which an adjournment is sought and make its own determination as to whether a person subject to commitment is attempting to manipulate the system").

¶47 Based on that evidence, the court then has two options: issue a detention order or adjourn the hearing. See Wis. Stat. § 51.20(5)(a), (10)(d); E.J.W., 399 Wis. 2d 471, ¶34 ("Whether to grant or deny an adjournment is a decision left to the circuit court's discretion."). If it chooses to issue a detention order, the recommitment hearing would be held within

seven days of detention. § 51.20(10)(d).[20] If the court chooses to adjourn, it may end the proceedings or hold another hearing up until the commitment order expires. See Walworth County v. M.R.M., 2023 WI 59, ¶24, 408 Wis. 2d 316, 992 N.W.2d 809 ("[T]he circuit court must hold a hearing on the petition for extension before the previous order expires or it loses competency to extend the commitment." (quoted source omitted)).

¶48 Elsewhere in § 51.20, the legislature provides evidence that default judgment should not be available in recommitment proceedings. In § 51.20(10)(c), the legislature says that "[t]he court shall hold a final hearing" to determine if recommitment is appropriate. With that mandate in mind, our court of appeals reasoned that summary judgment would shortchange subject individuals by depriving them of a commitment hearing. Shirley J.C. v. Walworth County, 172 Wis. 2d 371, 378, 493 N.W.2d 382 (Ct. App. 1992) ("If we were to allow summary judgment, the hearing requirement in [§ 51.20(10)(c)] would be meaningless."). Similarly, if a court entered default judgment, it would undermine the legislature's mandate that the court hold a hearing.

¶49 And we should heed the legislature's mandate especially closely in this context, given that default judgment is "the ultimate sanction." Split Rock, 253 Wis. 2d 238, ¶64.

_____

[20] The County asks this court for guidance as to whether a detention order tolls the deadline for recommitment hearings. We do not decide that issue because the circuit court here did not issue a detention order.

Courts should "whenever reasonably possible . . . afford litigants a day in court." Id. All the more true in the context of a civil commitment, which "constitutes a significant deprivation of liberty." Addington v. Texas, 441 U.S. 418, 425 (1979). "With such an important liberty interest at stake, the accompanying protections should mirror the serious nature of the proceeding." Langlade County v. D.J.W., 2020 WI 41, ¶43, 391 Wis. 2d 231, 942 N.W.2d 277. Given the severity of a default judgment and the important interests at stake, we decline to read default judgment into chapter 51's recommitment process.

¶50 In contrast to our conclusion here, the S.L.L. court held that default judgment is available at recommitment hearings. See 387 Wis. 2d 333, ¶38. The court said that the legislature allowed default judgment when it incorporated the rules of civil procedure into chapter 51. See id. (citing Wis. Stat. §§ 51.20(10)(c), 806.02(5)). That holding was unsound in principle and we overrule it.[21] See Johnson, 407 Wis. 2d 195, ¶20 (precedent may be overruled when it is "unsound in principle").

---

[21] To summarize the impact of this decision on S.L.L.: We overrule S.L.L.'s holdings regarding (1) whether the subject individual must be provided notice of recommitment hearings under our statutes and (2) whether default judgment is available at recommitment hearings under our statutes. See 387 Wis. 2d 333, ¶¶27-28, 35-38. We do not disturb S.L.L.'s related holdings about: the content of a recommitment notice, the constitutional requirements for notice of recommitment, and the constitutional and statutory right to be present at the recommitment hearing. See id., ¶¶22-25, 29-30, 33-34.

¶51 The S.L.L. court went awry by focusing on the permissive nature of detention orders. The court highlighted the word "may" in Wis. Stat. § 51.20(10)(d), which gives circuit courts discretion over whether to issue detention orders. See § 51.20(10)(d) ("[T]he court may issue an order for the subject individual's detention . . . ." (emphasis added)); S.L.L., 387 Wis. 2d 333, ¶36. In the end, the S.L.L. court hinged its reasoning on this statutory discretion. It said that detention orders are "not mandatory" and "[t]herefore, [do] not preclude the use of non-conflicting general rules of civil procedure," like default judgment. See S.L.L., 387 Wis. 2d 333, ¶38; see also id., ¶36 n.25 (asserting it is "inexplic[able]" that "a discretionary decision" would "prohibit[] the circuit court from employing any other remedy against an absent defendant"). In fact, the court said there is "no textual suggestion" that detention orders should preclude default judgment. Id., ¶36 n.25.

¶52 However, we see a textual suggestion that detention orders preclude default judgment in Wis. Stat. § 51.20(10)(c). As we explained above, the legislature limited its incorporation of the civil rules, saying the rules apply "[e]xcept as otherwise provided" in chapter 51. Wis. Stat. § 51.20(10)(c); see also Wis. Stat. § 801.01(2) (noting the civil rules apply "except where different procedure is prescribed by statute or rule"). By using the phrase "[e]xcept as otherwise provided," the legislature suggests that the general rules of civil procedure should not apply when the legislature provided

23

specific procedures in chapter 51. Here, the legislature provided a procedure for courts to follow when a defendant does not appear for a recommitment hearing. The court may issue a detention order under Wis. Stat. § 51.20(10)(d).

¶53 We need not get distracted——as the S.L.L. court did—— by the fact that issuing a detention order is discretionary. A discretionary rule is still a rule that "otherwise provide[s]" a procedure for courts to follow. See § 51.20(10)(c).

¶54 Moreover, courts should generally "afford litigants a day in court" and "default judgments are regarded with particular disfavor." See Split Rock, 253 Wis. 2d 238, ¶64. The S.L.L. court never mentioned this directive. In the end, the S.L.L. court's conclusion runs contrary to our case law emphasizing the severity of default judgment and fails to heed the text of Wis. Stat. § 51.20(10)(c).

¶55 We hold that under our statutes, a circuit court may not enter default judgment for recommitment proceedings.

2. Default Judgment and Involuntary Medication

¶56 Similarly, default judgment is not available in involuntary medication hearings. We can see this in the plain text of our statutes. In Wis. Stat. § 51.61(1)(g)3., the legislature said——with exceptions not relevant to this case—— that a court orders involuntary medication "following a hearing." And the legislature provided guidance on what that hearing should look like. The statutory text says that the involuntary medication hearing "shall meet" the same requirements as other hearings under chapter 51.

24

§ 51.61(1)(g)3. ("The hearing under this subdivision shall meet the requirements of [Wis. Stat. §] 51.20(5), except for the right to a jury trial."). Under those requirements, a hearing must "conform to the essentials of due process and fair treatment," including "the right to counsel" and "the right to present and cross-examine witnesses." Wis. Stat. § 51.20(5)(a) (noting those requirements apply to all "hearings which are required to be held under this chapter").

¶57 If a circuit court were allowed to enter a default judgment, it would undermine the legislature's directive to hold a fair hearing. For instance, if a court could enter default judgment, subject individuals would not be able to "present and cross-examine witnesses." See § 51.20(5)(a).

¶58 Further, our law in similar contexts suggests that default judgments would undermine the statutory mandate to hold a fair hearing. In the criminal context, default judgment is not available. And in commitment proceedings, summary judgment is not allowed. Shirley J.C., 172 Wis. 2d at 378. Our court of appeals said that summary judgment would render the commitment hearing requirement "meaningless." Id.

¶59 Like criminal cases and commitment proceedings, involuntary medication hearings implicate liberty interests. "The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." Melanie L., 349 Wis. 2d 148, ¶43 (quoting Washington v. Harper, 494 U.S. 210, 221 (1990)).

25

"Administration of psychotropic drugs is no small matter." D.J.W., 391 Wis. 2d 231, ¶43 n.7.

¶60 And like summary judgment, default judgment undermines the hearing mandate. Default judgment is the "ultimate sanction" and deprives individuals of "a day in court and a trial on the issues." Split Rock, 253 Wis. 2d 238, ¶64. Thus, default judgment would violate the statutory requirement to hold hearings with "fair treatment." See Wis. Stat. § 51.20(5)(a).

¶61 We hold that default judgment is not allowed in involuntary medication hearings under Wis. Stat. § 51.61(1)(g)3.

* * *

¶62 Here, the court entered default judgment at M.A.C.'s August 16, 2022 recommitment and involuntary medication hearing. Since default judgment is not allowed in those proceedings, the court's order violated our statutes and the court erroneously exercised its discretion. Ford, 306 Wis. 2d 1, ¶28 ("An erroneous exercise of discretion may arise from an error in law . . . .").

C. Sufficiency of the Evidence

¶63 Finally, M.A.C. argues that the County did not provide sufficient evidence for the circuit court to order involuntary medication.[22] We agree.

---

[22] At times, M.A.C. seems to argue that the County also provided insufficient evidence for the recommitment order. But in her briefs to this court, she focuses on the sufficiency of the evidence for the involuntary medication order. Accordingly, we address only that order in this section.

¶64 When seeking an involuntary medication order, a county must prove that an individual is incompetent to refuse medication by clear and convincing evidence. Wis. Stat. § 51.20(13)(e); Melanie L., 349 Wis. 2d 148, ¶37. The county proves incompetence under the standard set forth in Wis. Stat. § 51.61(1)(g)4.[23]

¶65 Under that provision, a county must make two showings. First, a county must show that "the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual." § 51.61(1)(g)4.; Melanie L., 349 Wis. 2d 148, ¶67. Second, a county must make a showing regarding the individual's ability to appreciate that information under the standard in § 51.61(1)(g)4.a. or b. Here, the County focused on the latter,

---

[23] Wis. Stat. § 51.61(1)(g)4. says:

[A]n individual is not competent to refuse medication or treatment if, because of mental illness, developmental disability, alcoholism or drug dependence, and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual, one of the following is true:

a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.

b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment.

27

which requires showing that "because of mental illness," the subject individual is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness . . . in order to make an informed choice as to whether to accept or refuse medication." § 51.61(1)(g)4.b.

¶66 In this case, we must apply the statutory standard to the facts to determine whether the County met its burden. We do that review de novo. Melanie L., 349 Wis. 2d 148, ¶39.

¶67 As a threshold matter, M.A.C. did not forfeit her sufficiency challenge, as the court of appeals incorrectly determined. See M.A.C., No. 2023AP533, at ¶22. The court of appeals determined that M.A.C. forfeited this issue by failing to raise the issue in the circuit court. Id., ¶21. But even setting aside the issue of whether M.A.C.'s appointed recommitment counsel could have raised the issue in circuit court given that she had "no direction" from M.A.C., M.A.C.'s challenge is still proper by statute. Under Wis. Stat. § 805.17(4), in actions heard without a jury, "the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has objected in the trial court." Thus, forfeiture is not an obstacle to our review.

¶68 We determine that the County failed to meet its clear and convincing burden on the first showing—that the advantages, disadvantages, and alternative to a particular medication had been explained to M.A.C. Notably, the County did not formally

28

introduce anything into evidence and did not call any of its three proposed witnesses.[24] Instead, the County asked the circuit court to "rely upon the doctor reports" to make factual findings. The circuit court complied and made all its findings "[b]ased upon the doctors' reports and [M.A.C.]'s failure to appear."

¶69 But the doctors' reports weren't much to rely on. Neither doctor spoke to M.A.C., and one failed to explain how he obtained any information about M.A.C. Both doctors indicated they did not discuss the advantages, disadvantages, and alternatives to medication with M.A.C. Based on only those doctors' reports,[25] the court found that "[t]he advantages, disadvantages, and alternatives to medication [had] been explained" to M.A.C.

¶70 The County cannot prove that M.A.C. received information about the medications by relying on reports which

---

[24] We acknowledge that there is an open question about whether a petitioner must move court-ordered examination reports into evidence in recommitment proceedings. See Outagamie County v. L.X.D.-O., 2023 WI App 17, ¶¶34-36, 407 Wis. 2d 441, 991 N.W.2d 518 (suggesting that the rule may be different for commitment versus recommitment proceedings).

[25] The parties dispute whether the circuit court could rely on the case worker report which was attached to the recommitment petition. In that report, M.A.C.'s case worker indicated that a prescriber had "discussed the risks, benefits and alternatives to medications, particularly her Abilify Maintena injection" with M.A.C. But even if the court could rely on that report——an issue we do not decide——it would not change our decision. The prescriber discussed the medication with M.A.C. in April 2022, nearly four months before the hearing, and the conversation was about only one of M.A.C.'s three medications.

show that the opposite is true. The doctors' reports affirmatively state the examiners did not speak with M.A.C. about her medications. That cannot be enough to prove that "the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual." Wis. Stat. § 51.61(1)(g)4.

¶71 "Administration of psychotropic drugs is no small matter" and a circuit court's procedure "should mirror the serious nature of the proceeding." D.J.W., 391 Wis. 2d 231, ¶43 & n.7. Involuntary medication hearings "cannot be perfunctory." Melanie L., 349 Wis. 2d 148, ¶94. We hold that the County failed to provide sufficient evidence for M.A.C.'s involuntary medication.

### III. CONCLUSION

¶72 We reverse the decision of the court of appeals for three reasons. First, a subject individual is entitled to notice of recommitment and involuntary medication hearings under Wis. Stat. §§ 51.20(10)(a) and 51.61(1)(g)3. Second, under our statutes, default judgment is not available for recommitment or involuntary medication hearings. Third, the County failed to provide sufficient evidence for M.A.C.'s involuntary medication.

*By the Court.*—The decision of the court of appeals is reversed.

¶73 BRIAN HAGEDORN, J. *(concurring).* I agree with the majority that the notice provided to M.A.C. was insufficient. Both the recommitment and involuntary medication statutes require that notice be sent to the subject individual "and" his or her counsel.[1] The majority correctly explains why the statutory text and context support the conclusion that notice must go to both, not to counsel alone.[2]

¶74 On the recommitment issue, however, one might argue that we should nonetheless affirm because Waukesha County v. S.L.L. held that notice to the subject's attorney is sufficient. 2019 WI 66, ¶30, 387 Wis. 2d 333, 929 N.W.2d 140. But it is questionable whether S.L.L. should be understood this way, or at least, extended to a new statute. The provision at issue in this case——Wis. Stat. § 51.20(10)(a)——was not argued or briefed by the parties in S.L.L. Instead, the petitioner there argued that § 51.20(2)(b) required the County to personally serve her with the final hearing notice. Id., ¶11. The majority addressed § 51.20(10)(a) briefly, but only in a footnote

---

[1] For final recommitment hearings, the County is required to "notify the subject individual and his or her counsel of the time and place of final hearing." Wis. Stat. § 51.20(10)(a). And notice of the motion to involuntarily medicate a person must be sent to "the individual's counsel, if any, the individual and the [corporation] counsel." Wis. Stat. § 51.61(1)(g)3.

[2] This case does not ask us to decide how notice must be provided. The County argues that notice to the subject's attorney is sufficient; it does not argue that, if notice to the attorney is insufficient, mailing the notice to M.A.C.'s homeless shelter adequately apprised her of the proceedings. Therefore, like the majority, I would not address that question.

responding to the dissent. The majority explained that § 51.20(10)(a) does not require personal service because the legislature wrote "notify," not "serve" or "present." Id., ¶27 n.18.

¶75 This short rejoinder did not interact with the plain language of § 51.20(10)(a) which, again, was not raised or briefed by the parties. However, I acknowledge that the logic of S.L.L.——particularly its conclusion that notice to the attorney constitutes notice to the subject individual——would suggest § 51.20(10)(a) only requires notice to the attorney. But to my mind, the statutory language could not be clearer: the County "shall notify the subject individual and his or her counsel." § 51.20(10)(a) (emphasis added). This unmistakably mandates something different over and above the default rule of civil procedure that notice to counsel alone is enough.[3] The subject individual must be notified as well. Therefore, given that § 51.20(10)(a) was not at issue in S.L.L., I would not extend its reasoning here given its contradiction with what the text so plainly says.

¶76 And that conclusion is sufficient to decide this case.[4] Unlike the majority, I would stop there. For these reasons, I respectfully concur in the judgment.

---

[3] See Wis. Stat. § 801.14(2).

[4] There are credible forfeiture arguments regarding M.A.C.'s failure to raise notice at the hearing or in a motion for postdisposition relief. However, the court of appeals substantively addressed notice and this court took the case to answer that question. Given this, even if forfeiture applies, I would reach the merits.

2

¶77 REBECCA GRASSL BRADLEY, J. *(concurring in part, dissenting in part).* I agree with the majority that the record lacked sufficient evidence for the circuit court to order involuntary medication. See majority op., ¶¶63-70. Wisconsin Stat. § 51.61(1)(g)4. required the County to show by clear and convincing evidence[1] "the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual." The County failed to show M.A.C. received such information. As the County requested, the circuit court relied on two reports that disclaimed any discussion of the advantages and disadvantages of accepting the particular medication or treatment ever took place. There was nothing in the record——much less clear and convincing evidence—— to support a finding that the advantages and disadvantages of accepting the particular medication or treatment were explained to M.A.C.

¶78 The majority proceeds to make a mess of the remaining issues. It erroneously overrules Waukesha County v. S.L.L., 2019 WI 66, 387 Wis. 2d 333, 929 N.W.2d 140, on the questions of notice and default judgment. Everyone agrees notice needed to be provided to both M.A.C. and her attorney; the question is how notice must be given. See Wis. Stat. § 51.20(10)(a) ("Within a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing."); Wis. Stat.

_____

[1] Wis. Stat. § 51.20(13)(e).

1

§ 51.61(1)(g)3. (requiring notice be sent "to the individual's counsel, if any, the individual and the applicable counsel under s. 51.20 (4)"). S.L.L. held that under Wis. Stat. § 801.14(2), providing notice to the subject individual's counsel satisfies the statutory requirement of providing notice to the individual. 387 Wis. 2d 333, ¶¶26-27, 27 n.18. As Chief Justice Annette Kingsland Ziegler well explains, S.L.L. reasonably interpreted § 51.20(10)(a) to specify who must be given notice, but not how; the rules of civil procedure, fully applicable to the civil proceedings under Chapter 51 in the absence of conflict, supply that answer. Dissent, ¶¶108-11. There is no legitimate reason to overrule S.L.L.

¶79 As for default, the majority seriously errs (again) by holding default judgment is unavailable in recommitment and involuntary medication hearings. As Chief Justice Ziegler explains, the rules of civil procedure, which provide for default judgment, are incorporated into Chapter 51, and nothing in Chapter 51 even remotely suggests those provisions are displaced. Id., ¶¶116-19. Wisconsin stat. § 51.20(10)(d) allows circuit courts to issue detention orders if the subject individual is not detained and fails to appear for the final hearing; nothing in the statute suggests this tool supplants the default judgment provisions. S.L.L., 387 Wis. 2d 333, ¶¶35-36. The Chief Justice rightly criticizes the majority for apparently relying on a newly minted canon of statutory construction, unmoored from the decisions the majority cites, which disfavors judicial use of default judgment. Dissent, ¶120. It is hard to

see the majority's analysis of whether default judgment is allowed in recommitment and involuntary medication hearings as anything but a shallow due process analysis masquerading as statutory interpretation.[2] While the majority may find its default judgment analysis useful in this case, meddling with the rules of civil procedure by exempting Chapter 51 cases from their application may unsettle other areas of civil law.

¶80 Because the majority gets only one issue right while botching the others, I concur in part and dissent in part.

---

[2] For example, the court suggests the hearing required under Wis. Stat. §§ 51.20(10)(c) and 51.61(1)(g)3. would be meaningless if default judgment is a tool available to circuit courts. But the majority's argument springs from the due process analysis of a court of appeals decision, not statutory interpretation. Shirley J.C. v. Walworth Cnty., 172 Wis. 2d 371, 378, 493 N.W.2d 382 (Ct. App. 1992). This argument also appeared in the due process analysis of the dissent in Waukesha County v. S.L.L., 2019 WI 66, ¶¶73-74, 387 Wis. 2d 333, 929 N.W.2d 140 (Ann Walsh Bradley, J., dissenting). The majority neglects to explain as a textual matter how default judgment in any way contradicts the requirement to hold a hearing.

¶81 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* M.A.C. filed a petition for review of a court of appeals decision which affirmed her recommitment and involuntary medication orders under chapter 51. The petition raises the following three issues:

> 1. [Under what circumstances may a default judgment] be entered against an individual who appears by counsel at a commitment hearing?

> 2. [W]hether Wis. Stat. § 51.20(10)(a) entitles an individual to personal notice of a recommitment hearing. This statute provides: "[w]ithin a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual <u>and</u> his or her counsel of the time and place of the final hearing."

> 3. [W]hether a person can forfeit their right to an examination of their competency to refuse medication.

¶82 The court of appeals concluded that this case was governed by this court's decision in <u>Waukesha County v. S.L.L.</u>, 2019 WI 66, 387 Wis. 2d 333, 929 N.W.2d 140. Regarding the issue of notice, the court of appeals stated:

> This court is bound by <u>S.L.L.</u>, where substantially similar arguments were made and rejected by our supreme court. In <u>S.L.L.</u>, our supreme court determined that service of the recommitment hearing notice on the subject's lawyer complied with the statutes and that using indirect service methods did not violate due process when the subject was homeless and had failed to adhere to the required condition of keeping the County informed of her current address. <u>S.L.L.</u>, 387 Wis. 2d 333, ¶¶26-30 & n.18. These same conclusions apply to M.A.C. First, service of the notice on her appointed attorney satisfies the statutes. Second, M.A.C., like S.L.L., failed to keep

1

the County informed of her current address, making it difficult if not impossible for the County to personally serve her the notice.

Waukesha Cnty. v. M.A.C., No. 2023AP533, unpublished slip op., ¶13 (Wis. Ct. App. July 28, 2023). The court of appeals also concluded that S.L.L. controls regarding the default judgment issue, as M.A.C. presented "the same factual scenario present in S.L.L., where our supreme court approved a default judgment." Id., ¶16.

¶83 The majority should exercise restraint instead of wading into issues that go beyond the arguments and merits of the case. Once the majority determined that notice must be provided to M.A.C., no other issues remain. The majority determines that M.A.C. is "entitled to notice" and that the legislature "meant for notice to be provided to both subject individuals and their attorneys." Majority op., at ¶¶3, 29. I agree notice must be provided. The issue becomes how notice must be provided. S.L.L. answered that notice can be provided indirectly. Whether the majority prefers it or not, the statutes allow notice to be provided in a variety of ways. Here, the majority fails to explain how notice can be provided to someone who does not apprise court or counsel of her whereabouts, and is homeless.

¶84 Additionally, given the fact the majority has concluded that notice was not properly provided to M.A.C., no other issues remain to be decided. In other words, the default judgment entered against M.A.C. is rendered moot by the majority's notice determination. Nonetheless, the majority needlessly wades into a determination that default judgment is

2

unavailable. Any rationale for this conclusion appears rooted in a particularized notion of "fairness," untethered to the law or practice and procedure. Default judgment is an available tool for relief that should not be disturbed.

¶85 Inexplicably, on its own volition, the court now determines that:

> (1) under our statutes a subject individual is entitled to notice of recommitment and involuntary medication hearings——notice to counsel only is not enough, (2) our statutes do not allow default judgment at those hearings, and (3) the County provided insufficient evidence for M.A.C.'s involuntary medication.

Majority op., ¶3. Particularly where, as here, the individual is homeless but is represented by a lawyer and fails to keep the court apprised of her whereabouts, the issue of receiving notice becomes more complicated. While this court's recent holding in S.L.L., 387 Wis. 2d 333, already definitively answers questions presented again in this case, the majority nonetheless overrules the S.L.L. court and reverses the court of appeals. I dissent because the court of appeals was correct. S.L.L., recently decided by this court, directly governs this case and should not be overruled.

¶86 M.A.C. was first committed in June 2020 and has been recommitted several times since. She is diagnosed with schizoaffective disorder and is treated with a monthly injectable dose of medication along with two oral medications. During the initial commitment, M.A.C. was released to outpatient status under a conditional order that provided if she missed scheduled medication appointments, the sheriff was authorized to

3

bring her to her monthly injection. M.A.C. believes that she does not have a mental illness and does not need medication. At some point she was evicted from her apartment and at the time of the recommitment order at issue, she was homeless.

¶87 A social worker who manages M.A.C.'s case filed a petition for an extension of her commitment. The petition requested a recommitment hearing and alleged that M.A.C.'s recommitment was needed to protect society, M.A.C., or both, and that M.A.C. is "dangerous because there is a substantial likelihood . . . that [M.A.C.] would be a proper subject for commitment if [her current] treatment is withdrawn."

¶88 The circuit court scheduled a recommitment hearing. The notice of hearing listed M.A.C. as homeless. The notice directed M.A.C. to contact the court-appointed doctors for examination before the recommitment hearing. The notice indicated that an attorney would be appointed to represent M.A.C. and the State Public Defender's office phone number was provided.

¶89 A public defender was appointed to represent M.A.C. for the recommitment hearing. Waukesha County sent a separate notice of recommitment to the State Public Defender's office and to the social worker managing M.A.C.'s case. It is undisputed that M.A.C. was not personally served with the notice of recommitment, but the State Public Defender's office did receive the notice.

¶90 M.A.C. did not contact either of the court-appointed doctors. Both doctors, however, filed reports with the circuit

4

court opining that M.A.C. met the statutory criteria and should be recommitted. One doctor based his opinion on prior examinations of M.A.C., her treatment records, and his contact with the social worker. That doctor recommended outpatient treatment for M.A.C. The other doctor did not specifically identify the basis for his opinion, although he referred to past examinations of M.A.C. and her treatment record. He recommended inpatient treatment.

¶91 The circuit court subsequently held a recommitment hearing. M.A.C. failed to appear. Her attorney was present and explained to the court:

> I have no explanation for her nonappearance. I have been trying to reach her. I know [the social worker] has been trying as well. [M.A.C.] did have her most recent shot, but she also has had a fairly recent, I think, shocking experience . . . . Her significant other . . . lit himself on fire in front of her.

Sadly, M.A.C. had apparently asked jail staff to kill her, and had expressed a desire to kill her boyfriend and her son.

¶92 Waukesha County stated that the court could order M.A.C. into custody, but the best option would be to find her in default "because the [Wis. Stat. § ]51[.]42 Board knows that [M.A.C.] is present in Waukesha County, and the [§ ]51[.]42 board has been able to provide services including her outpatient injection." The County stated:

> I don't think it would be in her best interests regarding her treatment to take her into custody [as] an inpatient. I don't think that's the least restrictive environment for her. I do understand that by finding her in default, this Court is giving up the rights that she has, but under Supreme Court precedent that comes out of this County, S.L.L., [387

5

Wis. 2d 333], the County has properly noticed [her], and, therefore, I ask the Court find her in default and rely upon the doctor reports to find the requisite requirements to continue commitment.

M.A.C.'s counsel said:

I have no direction from my client as to how she's wishing to proceed on this. I would agree with [the County] that I don't believe my client would want to be taken into custody. She has cooperated with getting her shot, and I don't know her position at this time.

¶93 Thereafter, the circuit court entered default judgment against M.A.C. As an evidentiary basis, the court relied on the doctors' reports that had been filed. The court concluded that the requirements for recommitment had been met. When M.A.C.'s counsel was asked her position, she responded that she was not in a position to object. The court found, based on the doctors' reports and M.A.C.'s failure to appear for the hearing, that grounds exist to extend the commitment, and that M.A.C. met the statutory criteria for an outpatient recommitment based on Wis. Stat. § 51.20(1)(am), linked to the third dangerousness standard, § 51.20(1)(a)2.c. The court ordered M.A.C. recommitted for 12 months. It then made the requisite findings that "[t]he advantages, disadvantages, and alternatives to medication [had] been explained" to M.A.C. The court also concluded that medication would have therapeutic value and "the advantages, disadvantages, and alternatives to medication had been explained" but that she was not capable of making an informed choice to refuse the medication because "due to mental illness" she is "substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives

6

of her condition." The circuit court then entered the involuntary medication order as well.

¶94 In the court of appeals, M.A.C. argued that she was entitled to personal service of the notice of recommitment hearing. She stated that the circuit court erroneously exercised its discretion by entering default against her with her attorney present at the recommitment hearing. Finally, M.A.C. stated the evidence presented was insufficient to support the orders entered by the circuit court. The court of appeals rejected these arguments and affirmed the circuit court's orders for recommitment and involuntary medication.

¶95 The court of appeals was correct. I respectfully dissent.

I. STATUTORY REQUIREMENTS

¶96 The seminal issue is whether notice was provided under the statute. Wisconsin Stat. § 51.20(10)(a) states, "Within a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing." When a party does not appear, that alone does not dictate whether the case may proceed. Before the case moves forward, however, the court often inquires whether notice was provided. The provision of notice may occur in a variety of ways. Sometimes statutory notice is properly provided indirectly.

¶97 The language of the statute directs the County to notify M.A.C. and her lawyer, but the statute does not provide how that notice must occur. We know that when personal service

7

is required——which is not required in this statute——the legislature uses different language. See Wis. Stat. § 51.20(2)(b) ("The notice of time and place of a hearing shall be served personally on the subject of the petition, and his or her attorney, within a reasonable time prior to the hearing to determine probable cause for commitment."); Wis. Stat. § 801.10(4)(b) ("Service by publication shall be proved by the affidavit of the publisher or printer, or the foreman or principal clerk, stating that the summons was published and specifying the date of each insertion, and by an affidavit of mailing of an authenticated copy of the summons . . . made by the person who mailed the same."); Wis. Stat. § 801.10(1) ("An authenticated copy of the summons may be served by any adult resident of the state where service is made who is not a party to the action. Service shall be made with reasonable diligence."); Wis. Stat. § 801.10(3) ("The person making service shall make and deliver proof of service to the person on whose behalf service was made who shall promptly file such proof of service. Failure to make, deliver, or file proof of service shall not affect the validity of the service."); Wis. Stat. § 801.10(4)(a) ("Personal or substituted personal service shall be proved by the affidavit of the server . . . . If the defendant is not personally served, the server shall state in the affidavit when, where and with whom the copy was left, and shall state such facts as show reasonable diligence in attempting to effect personal service on the defendant."); § 801.10(4)(c) ("The written admission of the defendant, whose

8

signature or the subscription of whose name to such admission shall be presumptive evidence of genuineness."); Wis. Stat. § 801.13 ("A summons is deemed served as follows: (1) A summons served personally upon the defendant or by substituted personal service upon another authorized to accept service of the summons for the defendant is deemed served on the day of service. (2) A summons served by publication is deemed served on the first day of required publication."); Wis. Stat. § 801.14(1), (2) (requiring service and filing of pleadings and other papers "upon each of the parties" and "[w]henever . . . service of pleadings and other papers is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party in person is ordered by the court.").

¶98 Parties providing notice must comply with the statutory provisions, but here, the statute does not dictate how notice must be provided. S.L.L. answered that notice can be provided indirectly. Here, the majority fails to explain how notice can be provided to someone who does not apprise court or counsel of her whereabouts, and is homeless.

## II. STARE DECISIS

¶99 The majority overrules S.L.L., 387 Wis. 2d 333, and concludes that "our statutes require notice to the subject individual—notice to counsel only is not sufficient. Majority op., ¶24. The majority also overrules S.L.L. on the issue of default, holding that "default judgment is not available at recommitment hearings or at involuntary medication hearings."

9

Majority op., ¶¶41, 56. S.L.L. correctly settled both the issue of notice and default judgment in an extension of commitment. Stare decisis should apply.

¶100 "Any time this court is asked to overturn a prior case, we must thoroughly consider the doctrine of stare decisis." Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶41, 281 Wis. 2d 300, 697 N.W.2d 417. "This court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law." State v. Luedtke, 2015 WI 42, ¶40, 362 Wis. 2d 1, 863 N.W.2d 592 (quoting Johnson Controls, Inc. v. Emp. Ins. of Wausau, 2003 WI 108, ¶94, 264 Wis. 2d 60, 665 N.W.2d 257); see also State v. Johnson, 2023 WI 39, ¶19, 407 Wis. 2d 195, 990 N.W.2d 174 ("We have repeatedly recognized the importance of stare decisis to the rule of law."). "Failing to abide by stare decisis raises serious concerns as to whether the court is 'implementing principles . . . founded in the law rather than in the proclivities of individuals.'" Progressive N. Ins., 281 Wis. 2d 300, ¶42 (quoting Payne v. Tennessee, 501 U.S. 808, 853 (1991) (Marshall, J., dissenting) (quoting another source)).

¶101 Fidelity to the principle of stare decisis is important because "frequent and careless departure from prior case precedent undermines confidence in the reliability of court decisions." Johnson Controls, Inc., 264 Wis. 2d 60, ¶95. "Stare decisis is the preferred course of judicial action because it promotes evenhanded, predictable, and consistent development of legal principles . . . and contributes to the

actual and perceived integrity of the judicial process." Id. "Stare decisis 'ensures the integrity of the judicial system by developing consistency in legal principles and establishing that cases are grounded in the law, not in the will of the individual members of the court.'" Clarke v. Wis. Elections Comm'n, 2023 WI 79, ¶128, 410 Wis. 2d 1, 998 N.W.2d 370 (Ziegler, C.J., dissenting) (quoting State v. Roberson, 2019 WI 102, ¶97, 389 Wis. 2d 190, 935 N.W.2d 813 (Dallet, J., dissenting)). "When existing law is open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results." Schultz v. Natwick, 2002 WI 125, ¶37, 257 Wis. 2d 19, 653 N.W.2d 266 (citation omitted).

¶102 S.L.L. definitively decided the issue, and notice to M.A.C. was proper. "[S]tare decisis concerns are paramount where a court has authoritatively interpreted a statute because the legislature remains free to alter its construction." State v. Braunschweig, 2018 WI 113, ¶11, 384 Wis. 2d 742, 921 N.W.2d 199 (quoting Progressive N. Ins. Co., 281 Wis. 2d 300, ¶45); Hilton v. South Carolina Public Rys. Comm'n, 502 U.S. 197, 202 (1991); see also Bryan A. Garner et al., The Law of Judicial Precedent 333 (2016) (Some Practicalities of Stare Decisis) ("Stare decisis applies with special force to questions of statutory construction. Although courts have power to overrule their decisions and change their interpretations, they do so only for the most compelling reasons . . . ."). "When a party asks this court to overturn a prior interpretation of a statute, it is [the party's] 'burden . . . to show not only that [the

11

decision] was mistaken but also that it was objectively wrong, so that the court has a compelling reason to overrule it.'" Progressive N. Ins. Co., 281 Wis. 2d 300, ¶45 (citing Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405).

¶103 In recognition of our "abiding respect for the rule of law," we require a "special justification" in order to overturn our precedent. See, e.g., Johnson Controls, Inc., 264 Wis. 2d 60, ¶94; State v. Johnson, 407 Wis. 2d 195, ¶19; State v. Young, 2006 WI 98, ¶51 n.16, 294 Wis. 2d 1, 717 N.W.2d 729; Schultz, 257 Wis. 2d 19, ¶37. This court recognizes five such special justifications for overruling precedent. State v. Johnson, 407 Wis. 2d 195, ¶20. These five justifications for overruling precedent exist in cases or situations in which:

> (1) the law has changed in a way that undermines the prior decision's rationale; (2) there is a "need to make a decision correspond to newly ascertained facts"; (3) our precedent "has become detrimental to coherence and consistency in the law"; (4) the decision is "unsound in principle"; or (5) it is "unworkable in practice."

Id. (quoting Young, 294 Wis. 2d 1, ¶51 n.16 (citing Johnson Controls, Inc., 264 Wis. 2d 60, ¶¶98-99)). Regarding the issue of notice, of these five special justifications, the majority determines that this court's holding in S.L.L. was unsound in principle because the S.L.L. court "did not adequately address the plain text of Wis. Stat. § 51.20(10)(a)." Majority op., ¶¶33-34.

¶104 Like this case, S.L.L. involved a challenge to an extension of a commitment proceeding. Following Waukesha

12

County's emergency detention of Ms. L.,[1] the circuit court found Ms. L. mentally ill and ordered her committed to the care and custody of Waukesha County for six months. The circuit court also found that Ms. L. was not competent to refuse psychotropic medication or treatment and authorized the involuntary administration of medication during the period of her initial commitment. Ms. L. reportedly responded well enough to treatment that the County executed a conditional transfer permitting Ms. L. to reside elsewhere so long as she agreed to abide by the transfer's requirements. These requirements "included taking all prescribed medications, complying with all ongoing treatment and activities recommended by the Waukesha County Health and Human Services Department, and notifying the County if she changed her address from the one listed in the Transfer." S.L.L., 387 Wis. 2d 333, ¶5. Ms. L. signed the transfer. While she attended one additional medication appointment after leaving, Ms. L. subsequently "absconded from treatment" and "failed to keep the County updated on her current address." Id.

¶105 The County cited to Ms. L.'s failure to comply with medical treatment and to apprise the court of her current address in their request for a 12-month commitment extension. The circuit court scheduled a hearing on the commitment extension. The court also ordered Ms. L. to undergo a pre-

---

[1] Waukesha County detained Ms. L. on an emergency basis pursuant to Wis. Stat. § 51.15(1) (2017-18).

13

hearing examination for her mental health condition, which Ms. L. failed to do.

¶106 In compliance with statutory requirements, the court sent notice of the extension hearing both to Ms. L.'s last known address and to her counsel.[2] The counsel received the notice, while "[t]he copy of the notice sent to Ms. L. was returned as undeliverable." S.L.L., 387 Wis. 2d 333, ¶6. Ms. L. failed to appear at the extension hearing. Ms. L. was nonetheless represented by counsel at the hearing, but counsel acknowledged that she had no communication with Ms. L. prior to the hearing and did not know her whereabouts.

¶107 The circuit court conducted the extension hearing in Ms. L.'s absence. The circuit court determined that Ms. L. was "subject to the jurisdiction of the Court through the pendency of the order." Id., ¶7. The circuit court then found Ms. L. "in default of her right to object" due to her "not appear[ing] here today." Id. Due to Ms. L.'s failure to schedule or attend the court-ordered physical examination, the court relied on earlier physician reports from the initial commitment and the County's extension petition. The circuit court granted the County's commitment extension petition, issuing an order

---

[2] See Wis. Stat. § 51.20(10)(a) ("Within a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing.").

14

extending Ms. L.'s commitment for 12 months.[3] The circuit court also issued a separate order authorizing the County to involuntarily medicate Ms. L. during the commitment.

¶108 As applicable to M.A.C., the S.L.L. court examined Wis. Stat. § 51.20(10)(a) and agreed that the plain text required the County to provide Ms. L. notice of her extension hearing. But, the S.L.L. court determined, the statute "provide[d] no specific directions with respect to the notification method." S.L.L., 387 Wis. 2d 333, ¶27. In other words, the court determined that while notice is statutorily required to be given, the statutes do not specify how that notice must be given. According to the court, since this was a civil proceeding, governed by the rules of evidence and civil procedure "except where it conflicts with chapter 51," § 51.20(10)(c), then compliance with the notice requirements of Wis. Stat. § 801.14(2) was sufficient.[4] As the S.L.L. court

---

[3] In support of its order, the circuit court made the following findings: Ms. L. was still mentally ill; she was a resident of Waukesha County; and she was a proper subject for inpatient treatment and commitment. Waukesha County v. S.L.L., 2019 WI 66, ¶7, 387 Wis. 2d 333, 929 N.W.2d 140.

[4] Wisconsin Stat. § 801.14 states, in relevant part:

> Whenever under these statutes, service of pleadings and other papers is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party in person is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy or by mailing it to the last-known address, or, if no address is known, by leaving it with the clerk of the court. . . .

§ 801.14(2).

determined, "[n]o part of [§ 801.14(2)] conflicts with § 51.20(10)-(13)." S.L.L., 387 Wis. 2d 333, ¶27. Thus, the court determined that "service on a party represented by an attorney may be accomplished by serving the attorney." Id. The S.L.L. court determined that the fact that Ms. L.'s copy of the notice was returned as undeliverable, due to her failure to keep the court informed of her most recent address, was "irrelevant." It was "irrelevant" because "notice to her counsel was sufficient" and "there was no statutory violation in the method of service chosen by the County." Id., ¶28.

¶109 The majority's argument then that the S.L.L. court "did not adequately address the plain text of Wis. Stat. § 51.20(10)(a)," majority op., ¶¶33-34, is baseless. The S.L.L. court did in fact "adequately address the plain text of []§ 51.20(10)(a)." The S.L.L. court established that the procedures governing commitment extensions are found in Wis. Stat. § 51.20(10)-(13). S.L.L., 387 Wis. 2d 333, ¶27. The S.L.L. court determined that the governing subsections "specify the content of the notice, and who must be notified," under § 51.20(10)(a). Id. The S.L.L. court stated that the governing subsections "point us to the answer" of which "notification method" is required, since § 51.20(10)(a) did not provide one. Id. As the court of appeals pointed out, the incorporated rules of civil procedure provided that "service on a party represented by an attorney may be accomplished by serving the attorney." Id. Since "no part of this [understanding] conflicts with § 51.20(10)-(13)," the S.L.L. court ultimately held that notice

to an individual's attorney complied with the statutory requirement. Id.

¶110 The majority opinion's reasoning is contradictory and fails to answer how notice must be provided. The majority opines that "the S.L.L. court did not adequately address the plain text of Wis. Stat. § 51.20(10)(a)." Majority op., ¶34. In the very next paragraph the majority then acknowledges that the S.L.L. court did in fact address and consider the plain text of § 51.20(10)(a) in addressing the issue of notice. Id., ¶35. While the S.L.L. court's discussion of § 51.20(10)(a) may have been "brief," it was a necessary component of the court's analysis of notice in recommitment hearings and stood as precedent——until today.

¶111 The fact that the majority apparently disagrees with the conclusion the S.L.L. court reached, does not render S.L.L.'s holding on notice "unsound in principle." The S.L.L. court adequately addressed the plain text of the statute and came to a reasonable conclusion, supported by the text, that notice to one's attorney was sufficient to satisfy the statutory requirements of notice. The S.L.L. court and the majority agree on the "who" question——that statutorily the "and" mandates that both the attorney and the subject individual need to be noticed. The point of disagreement is the "how" question. While the S.L.L. court answered the "how" question (and the dissent agrees with the S.L.L. court's conclusion), the majority fails to answer the "how" question, completely failing to explain how notice can be provided to someone who does not apprise court

17

or counsel of her whereabouts, and is homeless. Yet, the majority overrules S.L.L. anyway.

¶112 Returning to the present case, the record reflects that M.A.C. was properly noticed with the request for extension of commitment, she failed to appear, and she did not give her counsel any direction as to how to proceed. The court's hands should not be tied under these circumstances, any more than Ms. L.'s homelessness did not exempt her from complying with court orders to keep the court apprised of her address. Our court should be upholding its prior decision in S.L.L. The majority does not apply the requisite criteria necessary to overrule precedent. There is nothing unsound in principle about S.L.L.

¶113 The entry of an initial commitment order pursuant to Wis. Stat. § 51.20(13) triggers a number of things. Here, the circuit court maintained personal jurisdiction over M.A.C. M.A.C. raised no issues regarding notice with the circuit court. Counsel appeared on her behalf. Counsel did not object that notice was improper. M.A.C. even filed a motion for post-disposition relief but the motion did not mention defective notice. For those of my colleagues who also declare process to

be particularly important,[5] the issue of notice is not even properly before this court for review[6] as it was not previously raised.

_____

[5] _See_ _Doe 1 v. Madison Metro. Sch. Dist._, 2022 WI 65, ¶¶42-99, 403 Wis. 2d 369, 976 N.W.2d 584 (Roggensack, J., dissenting) (dissenting to the majority's decision to twice deny the parents' requested relief because "[l]itigation rules and processes matter," _id._, ¶39); _see also_ _Hawkins v. Wis. Elections Comm'n_, 2020 WI 75, ¶¶29-83, 393 Wis. 2d 629, 948 N.W.2d 877 (Ziegler, J., dissenting) (dissenting from court's decision to deny requested relief because there was no time for the court to grant any feasible relief); _Trump v. Biden_, 2020 WI 91, ¶¶107-139, 394 Wis. 2d 629, 951 N.W.2d 568 (Ziegler, J., dissenting); _Gymfinity, Ltd. v. Dane Cnty._, No. 2020AP1927-OA, unpublished order (Wis. Dec. 21, 2020) (Hagedorn, J., concurring) (concurred in order denying both petition for original action and emergency motion for temporary injunction as moot because the case "presents complicated legal issues across a number of claims involving disputed questions of fact" so "[i]t would be imprudent and potentially counter-productive to weigh in at this time"); _Trump v. Evers_, No. 2020AP1971-OA, unpublished order (Wis. Dec. 3, 2020) (Hagedorn, J., concurring) (concurred in denying petition for original action and motion to intervene "so that the petitioners may promptly exercise their right to pursue these claims in the manner prescribed by the legislature"); _Wis. Voters Alliance v. Wis. Elections Comm'n_, No. 2020AP1930-OA, unpublished order (Wis. Dec. 4, 2020) (Hagedorn, J., concurring) (Justice Hagedorn, joined by Justices Ann Walsh Bradley, Dallet, and Karofsky concurred in order denying petition for original action and motion to intervene due to the "sought after remedy" and "glaring flaws that render the petition woefully deficient"); _Mueller v. Jacobs_, No. 2020AP1958-OA, unpublished order (Wis. Dec. 3, 2020) (denying petition for leave to commence original action) (Roggensack, C.J., Ziegler and Rebecca Grassl Bradley, JJ., dissenting); _Zignego v. Wis. Elections Comm'n_, No. 2019AP2397, unpublished order (Wis. Jan. 13, 2020) (denying petition to bypass) (Rebecca Grassl Bradley, J., dissenting); _Stempski v. Heinrich_, No. 2021AP1434-OA, unpublished order (Wis. Aug. 27, 2021) (denying petition for leave to commence original action) (Ziegler, C.J., dissenting; Rebecca Grassl Bradley, J., dissenting); _Gahl v. Aurora Health Care, Inc._, No. 2021AP1787, unpublished order (Wis. Oct. 25, 2021) (denying petition for bypass because it "fails to establish that this case presents a sufficiently well-developed legal issue that meets our criteria for review"); _State ex rel._

19

¶114 Although Wis. Stat. § 51.20(10)(a) states that notice is to be provided to the individual and his or her counsel, it does not mandate a particular method of notice. The legislature knows how to designate a particular method of notice and it did not do so here. In fact, the legislature states that when notice is required to be made to a party represented by counsel, it shall be made upon the attorney. Wis. Stat. § 801.14(2) ("Whenever . . . service of pleadings and other papers is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party in person is ordered by the court."). There is no question that M.A.C.'s lawyer was provided notice. This notice to counsel is sufficient under Wis. Stat. § 801.14 and Wis. Stat. § 51.20(10)(a), as well as under this court's precedent in S.L.L.[7]

---

Vos v. Circ. Ct. for Dane Cnty., No. 2022AP50-W, unpublished order (Wis. Jan. 11, 2022) (Hagedorn, J., concurring) (concurred in order denying petition for supervisory writ and motion for emergency temporary relief because petition "comes nowhere close to meeting these legal standards" and the supervisory writ "is an extraordinary petition we grant only in the rarest of cases").

[6] See Terpstra v. Soiltest, Inc., 63 Wis. 2d 585, 593, 218 N.W.2d 129 (1974) ("The practice of this court is not to consider an issue raised for the first time on appeal."); Tatera v. FMC Corp., 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited.").

[7] Providing notice to M.A.C.'s counsel maintains M.A.C.'s due process rights. However, we note that M.A.C. did not raise any due process claims before the circuit court. Thus, that issue is not properly before this court.

¶115 However, not content to overturn S.L.L.'s holding on provision of notice, the majority also seeks to overturn S.L.L.'s holding that default judgment is a tool available for courts to use at recommitment hearings.[8] Given that the majority has concluded that notice was not properly provided to M.A.C., no other issues remain to be decided. In other words, the default judgment entered against M.A.C. is rendered moot by the majority's notice determination. Nonetheless, the majority needlessly wades into a determination that default judgment is unavailable. Any rationale for this conclusion appears rooted in a particularized notion of "fairness," untethered to the law or practice and procedure. Default judgment is an available tool for relief that should not be disturbed.

¶116 The legislature provided that the rules of civil procedure are incorporated into extension of commitment hearings. Wis. Stat. § 51.20(10)(c) (incorporating rules of civil procedure except to the extent they conflict with ch. 51) ("Except as otherwise provided in this chapter, the rules of evidence in civil actions and s. 801.01(2) apply to any judicial proceeding or hearing under this chapter."). Wisconsin Stat. § 801.01(2) provides that, "Chapters 801 to 847 govern procedure and practice in circuit courts of this state in all civil actions and special proceedings whether cognizable as cases at law, in equity or of statutory origin except where different procedure is prescribed by statute or rule." The default

_____

[8] See majority op., ¶41 ("We conclude that default judgment is not available at recommitment hearings or at involuntary medication hearings.").

21

procedures that are found in Wis. Stat. § 806.02(5) are not displaced by any procedure in Chapter 51. To the contrary, default procedures are applicable.

¶117 In the case at issue, no request for an adjournment was ever made.[9] The circuit court could have also enlisted any number of ways to actually bring M.A.C. into court, but counsel did not request that the court utilize those means. Had an objection to notice been made, the court could have considered alternative methods to ensure her appearance. The court, for example, could have issued a detention order for M.A.C., in accordance with Wis. Stat. § 51.20(10)(d).[10] The court was not

---

[9] See Wis. Stat. § 51.20(10)(e) ("At the request of the subject individual or his or her counsel the final hearing under par. (c) may be postponed, but in no case may the postponement exceed 7 calendar days from the date established by the court under this subsection for the final hearing.").

[10] Pursuant to Wis. Stat. § 51.20(10)(d), "[i]n the event that the subject individual is not detained and fails to appear for the final hearing the court may issue an order for the subject individual's detention and shall hold the final commitment hearing within 7 days from the time of detention."

required to do so.[11] The majority thus incorrectly agrees with M.A.C. "that the detention order is the outer limit on the circuit court's power." Majority op., ¶¶45-46. The majority's interpretation of the statute now actually incentivizes courts to use more aggressive means to bring individuals to court, a process that may not be particularly helpful to the individual. The S.L.L. court properly referenced the use of a detention order as being a tool in the court's toolbox. S.L.L., 387 Wis. 2d 333, ¶36. It seems after the majority decision today, the use of such orders will almost be required. As the S.L.L. court properly determined, pursuant to Wis. Stat. § 806.02(5), "issuance of a detention order under Wis. Stat. § 51.20(10)(d) . . . does not preclude the use of non-conflicting general rules of civil procedure" including an entry of default. Id., ¶38. "Circuit courts have the authority . . . to enter default judgment for failing to appear

---

[11] Wisconsin Stat. § 51.20(10)(d) states that the court "may issue an order for the subject individual's detention." Principles of statutory interpretation and canons of construction require that "when interpreting a statute, we generally construe the word 'may' as permissive," not mandatory. Heritage Farms Inc. v. Markel Ins. Co., 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465; City of Wauwatosa v. Milwaukee Cnty., 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963) ("Generally in construing statutes, 'may' is construed as permissive . . . ."); Barber Asphalt Co. v. City of Oshkosh, 140 Wis. 58, 121 N.W. 603 (1909) ("The ordinary and natural meaning of the word 'may,' when used in a statute, is permissive and discretionary, not mandatory . . . ."); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112 ("Mandatory/Permissive Canon") ("Mandatory words impose a duty; permissive words grant discretion. The traditional, commonly repeated rule is that shall is mandatory and may is permissive.").

23

at properly-noticed hearings in which the court has jurisdiction over the person." Id. The majority needlessly errs in declaring that default judgment is unavailable.

¶118 The majority also declares that "[s]imilarly" to their argument against default judgment entries for recommitment proceedings, "default judgment is not available in involuntary medication hearings." Majority op., ¶56. According to the majority, "[i]f a circuit court were allowed to enter a default judgment, it would undermine the legislature's directive to hold a fair hearing." Id., ¶57. Since "[d]efault judgment is the 'ultimate sanction' and deprives individuals of 'a day in court and a trial on the issues,'" the majority concludes that the plain text of Wis. Stat. § 51.61(1)(g)3. does not allow for default judgment in involuntary medication hearings. Id., ¶¶60-61.

¶119 Allowing courts to enter default judgment at involuntary medication hearings does not equate to the court foregoing holding a hearing. A hearing is held whether default is entered or not. As the court did here, it received evidence and proof from the County pursuant to the involuntary medication order, even though it entered default judgment against M.A.C. See Wis. Stat. § 806.02(5) ("If proof of any fact is necessary for the court to render judgment, the court shall receive the proof."). The majority overreaches to conclude that default judgment "undermine[s] the statutory mandate to hold a fair hearing" which "conform[s] to the essentials of due process and fair treatment." Majority op., ¶¶56-58. Because the majority

24

concludes that notice was not sufficient, the questions about default judgment are moot. Nonetheless, the majority concludes that an entry of default judgment "deprives individuals of 'a day in court and a trial on the issues.'" Id., ¶60. This does not comport with standard practice regarding non-appearance of an individual in civil matters. See Wis. Stat. § 806.02; Wis. Stat. § 51.20(10)(c).

¶120 In so doing, the majority appears to fashion its own canon of construction around this hearing issue, which resembles a due process analysis rather than a statutory interpretation analysis. Majority op., ¶¶48-49. It is a bit unclear whether the majority is making a statutory interpretation argument about hearings or a due process argument, even though at the outset the majority indicated it would not be addressing the due process argument. Majority op., ¶24 n.10. While the majority is correct that we have recognized default is a harsh sanction, it is unclear how the majority connects that understanding to whether finding someone in default is nonetheless statutorily permissible.

¶121 We know that other statutes require hearings in matters where liberty interests are implicated, yet still allow for default judgment. For example, default judgment is permitted under chapter 48, which addresses termination of parental rights, a significant liberty interest. See Wis. Stat. § 48.23(2)(c). Despite the majority's conclusion that here a "fair hearing" cannot occur if default is entered, there seems

25

to be no such tension, when liberty interests are implicated in Chapter 48.

¶122 Under the majority's framing, little recourse is left to counties when an individual who was previously deemed mentally ill, dangerous, and a proper subject for treatment, cannot be located because they do not provide contact information and they are homeless. The court does not explain how to provide notice to such an individual. Under such a scenario, when the commitment order terminates, the State of Wisconsin's clearly stated policy to help, support, and treat those with mental illness is undermined. Our court system does not typically reward individuals who absent themselves from court proceedings and fail to comply with standing court orders. Allowing the individual to dictate whether the court can proceed is allowing the tail to wag the dog. Rather, the court must be allowed to proceed. The process has built-in procedural safeguards if and when the absenting individual later appears.

¶123 The S.L.L. court's holdings that notice to counsel is statutorily sufficient and that default is an available tool at extension of commitment hearings, are grounded in an analysis of the applicable statutory texts. The conclusions reached are consistent with the application of our rules of civil procedure. The S.L.L. court reached well-reasoned, workable conclusions. Yet, because the S.L.L. court reaches an outcome with which this majority disagrees, the majority labels it "unsound in principle" and overturns it. Mere disagreement with an opinion is not a "special justification" necessary to justify

26

overturning precedent. Fidelity to the principle of stare decisis demands more.[12]

### III. SUFFICIENCY OF THE EVIDENCE

¶124 With respect to the sufficiency of the evidence for the involuntary medication order, the circuit court relied upon the doctors' prior reports to make the appropriate findings under Wis. Stat. § 51.61(1)(g)4.[13] The County requested the court:

---

[12] See, e.g., Schultz v. Natwick, 2002 WI 125, ¶37, 257 Wis. 2d 19, 653 N.W.2d 266; State v. Johnson, 2023 WI 39, ¶¶19-20, 407 Wis. 2d 195, 990 N.W.2d 174; Johnson Controls, Inc., v. Employers Ins. of Wausau, 2003 WI 108, ¶94, 264 Wis. 2d 60, 665 N.W.2d 257; State v. Young, 2006 WI 98, ¶51 n.16, 294 Wis. 2d 1, 717 N.W.2d 729; see also Payne v. Tennessee, 501 U.S. 808, 852 (1991) (Marshall, J., dissenting) ("[S]tare decisis is important not merely because individuals rely on precedent to structure their commercial activity but because fidelity to precedent is part and parcel of a conception of the 'judiciary as a source of impersonal and reasoned judgments.'").

[13] Wisconsin Stat. § 51.61(1)(g)4. states:

[A]n individual is not competent to refuse medication or treatment if, because of mental illness, developmental disability, alcoholism or drug dependence, and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual, one of the following is true:

a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.

b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment.

27

rely upon the doctors' reports in file to conclude that [M.A.C.] is mentally ill, that she is dangerous based on a substantial probability of physical impairment or physical injury to self [or] others as manifested or shown by a substantial likelihood based on treatment record that she would be a proper subject for commitment if treatment were withdrawn.

¶125 The court found that "[b]ased upon the doctors' reports and [M.A.C.]'s failure to appear today" that "there are grounds for extension of the commitment," and that "medication or treatment will have therapeutic value" for M.A.C., as "[s]he does need medication or treatment." The court also found:

The advantages, disadvantages, and alternatives to medication have been explained to [M.A.C.], however, due to mental illness, she is not competent to refuse psychotropic medication or treatment because she is substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives of her condition in order to make an informed choice as to whether to accept or refuse psychotropic medication.

¶126 Notably, counsel for M.A.C. did not object.[14] Had counsel objected, perhaps the court would have made additional, detailed findings. The court based its decision on reports that were previously filed with the court and are clearly part of the record. They were referenced by the court. In making their

---

[14] See Wis. Stat. § 805.11(1) ("Any party who has fair opportunity to object before a ruling or order is made must do so in order to avoid waiving error."); Wis. Stat. § 805.11(2) ("A party raising an objection must specify the grounds on which the party predicates the objection or claim of error."); State v. Counihan, 2020 WI 12, ¶26, 390 Wis. 2d 172, 938 N.W.2d 530 ("The purpose of the forfeiture rule is to enable the circuit court to avoid or correct any error as it comes up, with minimal disruption of the judicial process and maximum efficiency." (citing another source)); see also State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.

28

recommendation to the court, the court-appointed examiners reviewed these treatment records and their earlier examinations of M.A.C. The doctors' reports support the proof required for the extension of commitment.[15] There was no need, nor was there a request, that testimony be taken.

¶127 The involuntary medication order is also sufficient. M.A.C. denied the need for medication. This denial was consistent in her treatment records. However, the court ordered her to appear to be examined by the doctors. While her nonappearance before the doctors was the reason that they had no opportunity to explain the advantages, disadvantages, and alternatives, the record reflects that she did recently have those cautionary statements provided to her from her prescriber. The doctors' reports support the conclusion that she was incapable of applying an understanding of the advantages, disadvantages, and alternatives. As a result, the order for extension of commitment and order for involuntary treatment and medication should be upheld.

¶128 M.A.C.'s decision to absent herself from court proceedings, and her decision to forgo court-ordered medical examination pursuant to an involuntary medication order, should not then foreclose a court from conducting its business. If it

---

[15] For an initial civil commitment, counties bear the burden to prove, by clear and convincing evidence, that the subject is (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous. Wis. Stat. § 51.20(1)(a). The recommitment standard is governed by § 51.20(1)(am), which is often supported by the individual's pre-commitment behavior and a finding of "dangerousness." See § 51.20(1)(a)2.e.

did, this would allow the tail to wag the dog; someone who does not want a court order to be entered, can decide to not come to court. That makes no logical sense. If an individual fails to comply with a court-ordered medical examination, as M.A.C. did, the doctors are not proscribed from basing their recommendation on the information available to them——what they previously knew and what was in the record. The court can certainly benefit from the most recent data, but the court is not handcuffed from proceeding forward and rely on the most up-to-date information it has at its disposal, especially given the individual's failure to participate as ordered.

¶129 For all of the foregoing reasons, I respectfully dissent.