COURT OF APPEALS
DECISION
DATED AND FILED

February 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP1195**

STATE OF WISCONSIN

Cir. Ct. No.  2023ME189

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF N.A.L.:

SHEBOYGAN COUNTY,

PETITIONER-RESPONDENT,

V.

N.A.L.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed.*

¶1 GUNDRUM, P.J.[1] N.A.L., referred to herein by the pseudonym Nathan, appeals from orders involuntarily committing him for six months under WIS. STAT. ch. 51 and allowing for the involuntary administration of medication and treatment during that time. He also appeals from a postdisposition order. For the following reasons, we affirm.

## Background

¶2 On November 25, 2023, Nathan was emergently detained pursuant to WIS. STAT. § 51.15 after he admitted to hospital personnel that he was hearing voices telling him to harm himself. The circuit court held a probable cause hearing on November 29, 2023.

¶3 At the hearing, Nathan's counsel indicated Nathan "wants to see [about a] possible settlement agreement" but for purposes of the issue before the circuit court at that time—probable cause—expressed that Nathan was "not contesting the probable cause" or any medication and treatment order. When directly questioned by the court, Nathan agreed probable cause existed and that he was not contesting Sheboygan County's request for a medication and treatment order. Based on Nathan's stipulation, the court found probable cause to believe Nathan was "dangerous to [him]self or others." The court also ordered Nathan involuntarily medicated and treated "if the need arises" and scheduled a final hearing for December 7, 2023.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4    At the final hearing, counsel for the County represented his understanding that Nathan was "not contesting the request by the County at this point" and asked "the [c]ourt to move both doctors' report[s] into the record and use those as a basis for the [c]ourt's findings along with [Nathan's] stipulation." Nathan inquired, "What's a stipulation?" Nathan's counsel stated he agreed with the County's representation and added, "I'll clarify my client's question just to make sure he agrees with the statement I'm making." Discussion continued:

> [Nathan's Counsel]: Your Honor, having reviewed both doctors' evaluations and going through them with my client, we are not disagreeing, AKA, contesting the doctors' recommendation and therefore the County's request. So we are stipulating to the request of the County.
>
> My client would like to be released today, but he understands based on that request that he would be released by the treating physician there at Winnebago and that it is a locked facility at this time. He is not contesting at this point. He's working with the Department. And, again, based on those doctors' evaluation, he's not contesting.
>
> THE COURT: Okay. So, [Nathan], stipulation just means you're agreeing that the Court, meaning me, Judge Persick, can grant a commitment in your case; is that correct?
>
> [Nathan]: I suppose.
>
> THE COURT: Okay. I'll receive the doctors' report. I'll find that [Nathan] is suffering from a mental illness, that he's a danger to himself or others if not treated and [is] a proper subject for treatment.
>
> And, [Counsel], are you asking that I specifically find dangerousness under the first and second standard?
>
> [County Counsel]: And the third standard as well, Your Honor.
>
> THE COURT: Okay. So ordered. And … is there a medication order request?
>
> [County Counsel]: There is.

THE COURT: Okay. I'll find that … the doctor has explained the advantages, disadvantages, and alternatives of medication to [Nathan]. They'll have a therapeutic value. They won't impair his ability to prepare for or participate in legal proceedings. And because of his mental illness, he's not able to apply an understanding of the advantages of the medications to his situation.

So, [Nathan], I'm asking you to take your medications voluntarily, but if you don't --

[Nathan]: I am.

THE COURT: Okay. That's great. But I'll authorize them to be administered involuntarily if you don't agree in the future. Hopefully you will continue to agree.

[Nathan]: I will continue to agree if I get discharged from Winnebago here.

THE COURT: Yeah. That will lead to your discharge eventually because that will help stabilize you.

[Nathan]: How long do I have to wait?

THE COURT: That's something you'd have to ask your doctor because that will be when your doctor thinks you're ready.

[Nathan]: Oh.

THE COURT: Okay?

[Nathan]: Well, I thought that we were evaluating that today on the court date.

THE COURT: Today was just to decide whether there should be a commitment order or not.

[Nathan]: I don't --

THE COURT: Well, that creates some issues, [Counsel]. Did you want a chance to speak to your client quickly?

[Nathan's Counsel]: Your Honor, I don't. I mean, I can try to call the [I]nstitute. I'm not sure if there's a way to -- there's not really a breakout room.

When I spoke to him, it was my understanding that he -- and that's why I reiterated earlier he does want to be

4

released today. We had talked about him working with the case manager and talking to them, you know, today, I think, when they project his discharge but understanding that it would be up to that treating physician. And that's why I stated we understood it would be up to the Winnebago doctors.

[Nathan]: I agree to that.

[Nathan's Counsel]: Right.

THE COURT: All right. So, [Nathan], you do agree to that?

[Nathan]: Yes.

THE COURT: Okay. And are you also agreeing that there can be a commitment order?

[Nathan]: Only if I'm able to be discharged in the next, you know, agreeable period of time.

THE COURT: And I don't have an answer to that how soon that will be.

[Counsel], have you had any discussions with his case manager? Do you know what a reasonable expectation is?

[Nathan's Counsel]: I did not get that answer. I'm not sure. I don't know the specific number. I don't know.

THE COURT: Well, it's unclear to me whether this is an actual stipulation to commitment or not.

One thing we can do, [Counsel], is I can hang up. [Counsel for the County] can hang up. The court clerk will still be on the phone, but you and your client could discuss it, I guess, somewhat privately.

[Nathan's Counsel]: Sure.

[Nathan]: Can we go to room 110, and we can do this like we did this the other time and do … a video chat like we did before so that I can have more confidence in the [c]ourt and the findings?

[THE COURT]: Yeah. This isn't set up as a video chat. I have no ability to do that right now….

[Nathan]: Can we schedule one for today?

¶5    The circuit court considered whether the final hearing could be rescheduled for later that day, but Dr. Marshall Bales, who was present by phone to testify for the final hearing, indicated he likely would not be available. Bales added:

> It's about housing support and then getting a good aftercare plan. I will estimate he will be out of there within a day or two. But I just don't want to speculate and not receive an update. But he really is not going to be in there long term based on what I had seen when I interviewed him if that helps.

Nathan responded, "That does help." The court then asked Nathan, "[W]ith that representation by Dr. Bales, … are you willing to agree to the commitment?" Nathan responded, "Yes. I'm willing to agree."

¶6    Discussion continued:

> [THE COURT]: Okay. Then all the findings I made previously will remain in place, and then that is all for today. Thank you.
>
> [Nathan]: So then I'm supposed to be released in a few days of my commitment, or what does this mean?
>
> [THE COURT]: [Counsel], are you still there?
>
> ….
>
> COURT CLERK: [H]e … h[u]ng up.
>
> THE COURT: [Nathan], I'm going to advise you to contact your attorney, but Dr. Bales thought it would be within a few days.
>
> [Nathan]: Okay. Thank you.
>
> DR. MARSHALL BALES: The final word is your treating doctor, but truly we want you to have good housing and [an] aftercare plan to make sure you don't have to come back to Winnebago. But safely. It's getting cold out, sir.
>
> [Nathan]: I understand that, sir.

6

DR. MARSHALL BALES: Okay.

[Nathan]: And I have a place to go, which would be either my brother's house or my sister's house.

¶7      The hearing ended, and the circuit court entered orders committing Nathan for six months and allowing for his involuntary medication and treatment during that time. Nathan filed a postdisposition motion, contending the court erred by failing to conduct a colloquy to ensure Nathan's stipulation was knowingly, intelligently and voluntarily entered. The court denied the motion, and Nathan now appeals.

*Discussion*

¶8      Nathan contends the circuit court erred "by failing to conduct a colloquy to ensure that [Nathan's] stipulation to commitment and attendant waiver of rights was knowing, intelligent, and voluntary." He claims a colloquy is constitutionally required under the Due Process Clause because such a stipulation waives the fundamental rights "to be free from physical restraint" and to a fair hearing where the County must "prove by clear and convincing evidence that [he] is mentally ill and dangerous." Nathan asks us to declare that both of these rights are fundamental rights that cannot be waived without a personal colloquy.

¶9      "The United States Supreme Court 'repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Langlade County v. D.J.W.*, 2020 WI 41, ¶42, 391 Wis. 2d 231, 942 N.W.2d 277 (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). Whether due process requires the circuit court to engage in a personal colloquy prior to accepting a stipulation to that deprivation of liberty is a question of law we decide de novo. *Waukesha County v. S.L.L.*, 2019 WI 66,

¶10, 387 Wis. 2d 333, 929 N.W.2d 140, *overruled on other grounds by **Waukesha County v. M.A.C.**, 2024 WI 30, ¶33, 412 Wis. 2d 462, 8 N.W.3d 365.

¶10　To begin, Nathan asserts that "[i]t is not enough to presume a waiver of such important rights from a silent record." The record here, however, is anything but "silent." This is not a case where the parties entered into a stipulation outside of court and submitted paper documents to that effect for the court's approval. Here, the circuit court did engage in direct discussion with Nathan and his counsel. Indeed, after confirming with Nathan that he wanted to enter into the stipulation, the court paused and questioned whether Nathan really wanted to stipulate. It did so because Nathan had hedged when he stated he was agreeing to the commitment order "[o]nly if I'm able to be discharged in the next, you know, agreeable period of time." The court offered Nathan and his counsel the opportunity to speak together outside the presence of the court and the County, an offer Nathan appeared to desire so that he could "have more confidence in the [c]ourt and the findings," with Nathan's concern being how long it would be until he was released. Nathan's concern was quickly allayed, however, when Bales estimated, without promising, that Nathan would likely be released "within a day or two." The court then asked Nathan if he was "willing to agree to the commitment," to which Nathan responded, "Yes. I'm willing to agree." Again, this was anything but a "silent record."

¶11　Notably, Nathan does not assert or develop an argument that his stipulation in fact was not knowingly, intelligently and voluntarily entered. Instead, he asserts that the stipulation was infirm and the related commitment order should be reversed because of a new requirement he wants us to impose—that prior to accepting a stipulation, the circuit court must engage a person subject

to involuntary commitment proceedings in a colloquy equivalent to that required for a criminal plea.

¶12     We have already squarely addressed the issue now before us, and not in Nathan's favor.  In *Dane County v. N.W.*, No. 2019AP48, unpublished slip op. ¶1 (WI App Aug. 29, 2019),[2] the committee challenged the circuit court's order extending his involuntary commitment, which order was based on a *written* stipulation.  The committee argued on appeal, as we stated it, that the court "was required to conduct a personal colloquy with him to ensure that he knowingly, intelligently, and voluntarily agreed to the extension."  *Id.*  The committee asserted that "because the court did not conduct such a colloquy, the court's acceptance of the stipulation and the entry of the order extending his commitment violated his constitutional right to due process."  *Id.*  We concluded that the court "was not required to conduct a personal colloquy with [the committee] before accepting his stipulation."  *Id.*

¶13     Like Nathan, the committee in *N.W.* also argued that because criminal defendants and parents subject to termination of their parental rights have a due process right to a personal colloquy to ensure their plea is knowing, intelligent and voluntary, committees should have the same right when entering into a WIS. STAT. ch. 51 stipulation.  *See N.W.*, No. 2019AP48, ¶7.  We rejected this position, noting that the committee's argument failed to account for "the significant material differences between ch. 51 involuntary commitments and

---

[2] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value.  *See* WIS. STAT. RULE 809.23(3)(b).

criminal prosecutions and actions to terminate parental rights." ***N.W.***, No. 2019AP48, ¶7.

¶14 In particular, we observed that "in criminal prosecutions and proceedings to terminate parental rights, a personal colloquy is mandated by statute," and we noted that the legislature had set forth numerous due process requirements for involuntary commitment proceedings but did not include a requirement for a personal colloquy when entering into a stipulation. ***Id.***, ¶8. Additionally, we pointed out that "the purpose of a WIS. STAT. ch. 51 proceeding is not punitive but, rather, is intended to provide an individual with treatment and services that, consistent with his or her needs, will restore his or her mental health in 'the least restrictive' manner." ***N.W.***, No. 2019AP48, ¶9 (quoting WIS. STAT. § 51.20(13)(c)2.). We further noted that the United States Supreme Court "has held that, because a commitment similar to that described in ch. 51 is 'not exercised in a punitive sense,' it 'can in no sense be equated to a criminal prosecution.'" ***N.W.***, No. 2019AP48, ¶9 (quoting ***Addington***, 441 U.S. at 428). Because of this, we rejected the committee's "attempt to draw criminal case procedures into ch. 51 proceedings when the legislature has rejected those procedures." ***N.W.***, No. 2019AP48, ¶9. We additionally noted that ch. 51 proceedings "are civil in nature and are subject to the rules of civil procedure" and observed that the relevant, governing statute, WIS. STAT. § 807.05, "does not contain a requirement that the [circuit] court conduct a personal colloquy with a party entering into a stipulation to determine that the party is doing so knowingly, intelligently, and voluntarily." ***N.W.***, No. 2019AP48, ¶10.

¶15 We agree with Nathan that due to the deprivation of liberty at stake, a committee in a WIS. STAT. ch. 51 proceeding has certain due process rights. *See **Lessard v. Schmidt***, 349 F. Supp. 1078, 1091-94, 1097-1101 (E.D. Wis. 1972),

*vacated and remanded on other grounds*, 421 U.S. 957 (1975), *reinstated*, 413 F. Supp. 1318 (E.D. Wis. 1976) (identifying due process rights, including notice and an opportunity to be heard, proof that the committee poses a serious danger of harm to him or herself or others, the right to counsel, and the privilege against self-incrimination); ***Outagamie County v. Michael H.***, 2014 WI 127, ¶26, 359 Wis. 2d 272, 856 N.W.2d 603 ("In response to ***Lessard***, the legislature enacted three new civil commitment laws ... [including] one for persons who are acutely mentally ill .... [T]hese laws authorize court ordered institutionalization of mentally disabled individuals for the purpose of care and custody." (alterations in original) (quoting ***Watts v. Combined Cmty. Servs. Bd. of Milw. Cnty.***, 122 Wis. 2d 65, 72, 362 N.W.2d 104 (1985)); *see also* ***Addington***, 441 U.S. at 425 ("[A] civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."). As the ***Lessard*** decision, to which Nathan directs us, explains, however, "[t]he requirements of due process are not static; they vary depending upon the importance of the interests involved and the nature of subsequent proceedings." 349 F. Supp at 1086. And, we have previously stated, "It has been repeatedly determined that the due process standard to be applied in involuntary commitment cases at the hearing stage is to be a flexible one, and need not be as strictly construed as that applied in criminal proceedings." ***Milwaukee County v. Parham***, 95 Wis. 2d 21, 25, 289 N.W.2d 326 (Ct. App. 1979).

¶16     There is a reason the WIS. STAT. ch. 51 due process protections are not as demanding as those in the criminal and TPR contexts. With an initial involuntary commitment, liberty deprivations to a committee will cease after six months, *see* WIS. STAT. § 51.20(13)(g)1., unless there is a petition to extend the commitment, a re-examination of the committee, and a new hearing.

11

Significantly, for a county to continue depriving a committee of any liberty, it must repeatedly prove grounds for continued commitment. This is not so in the criminal or TPR contexts—in those contexts, there is no re-examination or repeated proof needed for decades-long incarcerations or permanent loss of the rights to a child. And, unlike in a criminal case, records related to the commitment in a ch. 51 case are confidential. *See* WIS. STAT. § 51.30(3).

¶17 Additionally, to enter a commitment order in a WIS. STAT. ch. 51 case, a circuit court must necessarily find that the committee is, at the time of the hearing, mentally ill, drug dependent or developmentally disabled, which finding is generally based upon evidence presented by a mental health professional. *See* WIS. STAT. § 51.20(1)(a)1., (9)(a)1., 5. Not so for criminal defendants or parents in a TPR case entering a plea. Indeed, Nathan may be more successful arguing for the elimination of stipulations in all ch. 51 proceedings, because importing criminal-level requirements to ensure a knowing, intelligent and voluntary stipulation would make stipulations more susceptible to challenge than in criminal or TPR cases so that counties may simply choose to forego agreeing to them altogether. This is so because the foundational evidence for the court's finding that a committee is mentally ill, such as medical reports explaining that the committee is mentally ill, would necessarily provide an enhanced basis—beyond any existing in a criminal or TPR case—for the committee to subsequently argue that the stipulation was not knowingly, voluntarily and intelligently entered, i.e., that the committee did not understand the proceedings and/or what he/she was agreeing to. Indeed, even if the circuit court did everything it was supposed to do during a colloquy and a committee gave all the correct answers to make the court believe he/she was knowingly, voluntarily and intelligently entering into the stipulation, the committee would have stronger grounds than any defendant in a

criminal case or parent in a standard TPR case for claiming he/she did not knowingly, voluntarily and intelligently agree to the stipulation.

¶18 And further, as the County points out, in the criminal context, if a determination is made on appeal that a plea was not knowingly, voluntarily and intelligently entered, the matter is generally remanded to the circuit court and proceedings continue. In the WIS. STAT. ch. 51 context, however, if an appellate court were to determine that the stipulation was not knowingly, intelligently and voluntarily entered, the circuit court generally will already have lost competency to proceed further and the matter will have to be dismissed in its entirety. *See Sheboygan County v. M.W.*, 2022 WI 40, ¶35-36, 402 Wis. 2d 1, 974 N.W.2d 733.

¶19 For all of the foregoing reasons, we decline Nathan's invitation to hold that the Due Process Clause of the United States Constitution requires us to import criminal knowing, voluntary and intelligent plea-type requirements into the context of a WIS. STAT. ch. 51 stipulation.[3]

*By the Court.*—Orders affirmed.

---

[3] Nathan filed a motion requesting that we convert this case to a three-judge panel and issue a published opinion. This court held the motion in abeyance pending the completion of briefing. Nathan's argument is so modestly developed in his brief-in-chief, however, that this case is not a proper vehicle for a published three-judge opinion. Particularly when the position he advocates for is contrary to multiple prior unpublished decisions from this court, *see*, *e.g.*, *Dane County v. N.W.*, No. 2019AP48, unpublished slip op. (WI App Aug. 29, 2019); *Kenosha County. v. L.A.T.*, No. 2022AP603, unpublished slip op. (WI App Jan. 11, 2023), a more thoroughly developed argument would be appropriate, perhaps even drawing from mental commitment decisions from other states clearly holding the position he advances here, if such decisions exist. Moreover, while Nathan's brief pulls out many quotes from cases, the legal "arguments" are too conclusory and insufficiently developed to provide the necessary support for a published opinion. Thus, based on the parties' briefs and the record, Nathan's motion for a three-judge panel is denied.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.