# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 23, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2026AP735-CR**
**2026AP736-CR**
**2026AP737-CR**

Cir. Ct. Nos. 2022CF1322
2022CF1323
2023CF1026

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

R. L. S.,

DEFENDANT-APPELLANT.

APPEALS from orders of the circuit court for Brown County: SAMANTHA WAGNER, Judge. *Reversed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   In these consolidated appeals, Ryan[1] challenges circuit court orders authorizing his involuntary medication for the purpose of restoring him to competency in three criminal cases.   Ryan argues, among other things, that the circuit court failed to make the requisite findings under WIS. STAT. § 971.14(3)(dm) to order his involuntary medication.   For the following reasons, we agree with Ryan on this point, and we reverse the involuntary medication orders accordingly.[2]

## BACKGROUND

¶2     The State charged Ryan with five crimes in three Brown County cases.   In Brown County Case No. 2022CF1322, the State charged Ryan in July 2022 with driving a vehicle without the owner's consent after Ryan allegedly requested to test drive a vehicle at an automotive dealership and did not return the car until the following day.   That same month, in Brown County Case No. 2022CF1323, the State charged Ryan with second-degree sexual assault of a child under 16 years of age.   In that case, the State alleged that Ryan "came up behind" a 15-year-old girl at a mall and "grabbed her butt and lifted it" before

---

[1] Pursuant to WIS. STAT. RULE 809.81(8) (2023-24), we use a pseudonym when referring to R.L.S. in these confidential matters.

All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Ryan also argues on appeal that, irrespective of the circuit court's failure to make the requisite factual findings, the State failed to prove the requirements set forth in WIS. STAT. § 971.14(3)(dm) and that the State failed to establish the first factor under *Sell v. United States*, 539 U.S. 166 (2003).  Because we reverse the involuntary medication orders on the ground that the circuit court failed to make the requisite findings of fact under WIS. STAT. § 971.14(3)(dm), we do not address the merits of Ryan's remaining arguments.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (explaining that this court need not address all issues raised if one is dispositive).

2

"quickly … walking in the opposite direction." Finally, in Brown County Case No. 2023CF1026, the State charged Ryan in June 2023 with disorderly conduct, resisting an officer, and felony bail jumping. Those charges arose from allegations that Ryan asked to speak to a manager at an events center, claiming his locks were stolen after his locker had been cleaned out. Law enforcement was called after Ryan refused to leave, and he allegedly resisted arrest

¶3     A jury found Ryan guilty of the second-degree sexual assault charge in May 2025.[3] Before sentencing in that case, and while Ryan's remaining two cases were still pending, Ryan's competency was again raised as an issue. Following a hearing, the circuit court entered orders on August 15, 2025, finding that Ryan was incompetent to proceed in all three cases but likely to become competent within twelve months, and it shortly thereafter entered written orders for his commitment. In December 2025, Ryan was transferred from the Brown County Jail to an inpatient hospital setting.

¶4     On January 9, 2026, the Department of Health Services (DHS) filed a motion for an involuntary medication order. Accompanying the DHS's motion was an individualized treatment plan prepared by Dr. Jacqueline Landess and Dr. Molly Kadlec.

---

[3] Ryan's competency had been raised in the three cases before 2025. To briefly summarize, Ryan's competency was initially raised in these cases in December 2023. In March 2024, Ryan was found not competent but likely to become competent, and he was committed for treatment. In June 2024, the circuit court found that Ryan's competency had been restored. Ryan's competency was again raised in September 2024, and, following a court-ordered evaluation, Ryan was found competent to proceed in October 2024.

The Honorable Kendall Kelley presided over the March 2024 and June 2024 competency proceedings, and the Honorable William Atkinson presided over the September 2024 and October 2024 competency proceedings.

¶5    The individualized treatment plan detailed Ryan's previous treatment as a result of the competency proceedings in these three cases. The doctors noted that Ryan was treated in April 2024 with risperidone after "express[ing] delusional beliefs, including claims of being an undercover secret service agent." The risperidone improved Ryan's anxiety and reduced his delusional thoughts.

¶6    However, in July 2025, Ryan's "rational productivity was significantly impaired by his preoccupation with persecutory and grandiose delusional beliefs." At that time, Ryan "denied any current or past mental health diagnoses, denied [his] current psychotropic medications, and stated that he d[id] not believe he need[ed] medication based on his belief that he d[id] not have a mental illness." In November 2025, Ryan was found to be presenting paranoid thoughts and delusional thinking. The doctors further stated that "[r]ecords from Brown County Jail indicate[d] that [Ryan] was refusing most doses of risperidone," having "accepted only 2 doses … in October 2025, and in November 2025 he refused 'to take his risperidone for over a month, refusing to talk to mental health staff since May.'"

¶7    Upon Ryan's transfer from the jail to the inpatient hospital in December 2025, Ryan exhibited "symptoms of untreated mental illness, specifically schizophrenia." Ryan "denied [having] any current psychotropic medications," and he "presented as disorganized, tangential, paranoid, and with delusional thought content." Ryan "was informed of the advantages and disadvantages of risperidone" upon his admission to the inpatient hospital, but Ryan responded by "repeatedly [telling] psychiatric providers that he has not taken risperidone previously, does not believe that he has schizophrenia, and that he is

4

unwilling to take any medication while at" the hospital. Several days later, Ryan again "refused medications," stating he "could get in trouble for that because it's not medication for [him]."

¶8 On January 8, 2026, the doctors again met with Ryan and "discussed [the] recommendation of risperidone for treatment of schizophrenia. The advantages and disadvantages were explained once more," but Ryan refused to take "any medications." According to the doctors, Ryan "was able to convey a partial understanding of the risks and benefits of antipsychotic medication such as risperidone, however he was unable to apply this to himself and his condition." Ryan was then "provided with a[n] information print-out regarding risperidone."

¶9 Toward the end of the individualized treatment plan, the doctors checked a box next to the following statement: "The defendant is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives" of the proposed medication "to his … mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment." The doctors did not check the box next to the following statement: "The defendant is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives." The doctors made these two assessments based on their opinions "to a reasonable degree of medical certainty."

¶10 Beneath the checked box, the doctors stated that while Ryan "is able to express an understanding of the advantages and disadvantages of medication," he is "unable to apply this understanding to his mental illness." The doctors further explained:

5

> When discussing advantages and disadvantages of medication with [Ryan], he could recall some previous discussions about risperidone. Specifically he stated, "it improves cognitive functioning… helps with sleep and if you are hearing or seeing things then it'd help that." When asked if he recalls any possible side effects he says "yeah it might not work like it might not take away the voices or the seeing things." The risks of risperidone including weight gain, metabolic changes, dizziness, sedation, and potential movement disorders were explained to [Ryan] again. The potential benefits including treatment of hallucinations, delusions and paranoia, thought organization, mood and sleep stability, were also explained. He was also informed that there is no alternative to psychotropic medications such as antipsychotic medications for the treatment of schizophrenia. Afterwards he was asked to repeat these back to demonstrate his understanding and he replied "I'm not gonna repeat them all back to you but basically you said it could make me gain weight and movement stuff," in regards to risks, and "improve cognitive functioning and help with paranoia," in regards to benefits.… Throughout this conversation, and in previous encounters during his admission, [Ryan] has repeatedly declined psychotropic medications, asserted that he does not believe he has a mental illness, and denies a history of previous treatment with psychotropic medications. He currently appears incapable of understanding why he is currently considered incompetent to stand trial, and unable to appreciate that in 2024 when receiving treatment with risperidone his competency was subsequently restored.

(First ellipsis in original.)

¶11 The individualized treatment plan identified all of the medications the doctors requested to use to medicate Ryan, both orally and by injection, and it listed the maximum daily dosages of those medications. The doctors explained in the plan that Ryan would "first be offered risperidone given the historic benefit of this medication. If he does not tolerate this medication, or it is not deemed to be beneficial for treating current psychiatric symptoms, alternative treatment options will be discussed." The doctors further stated that Ryan "may be offered any of the oral antipsychotic medications (risperidone, aripiprazole, olanzapine,

6

quetiapine, haloperidol) …, as each could provide treatment for his symptoms of psychosis." In addition, the doctors reported that Ryan would "[i]nitially" "be administered a single antipsychotic medication. If he fails to respond to an initial antipsychotic or experiences intolerable side effects, we will switch him to an alternative. If he fails two therapeutic trials of antipsychotics, he may benefit from taking antipsychotics in combination." According to the doctors, Ryan might also be prescribed lorazepam "[i]f he experiences severe agitation."

¶12   Ryan contested the DHS's motion for an involuntary medication order, and the circuit court held a hearing on January 16, 2026. Doctor Kadlec was the sole witness at the hearing, and the court admitted the individualized treatment plan into evidence.

¶13   Following oral arguments from the parties, the circuit court granted the DHS's motion, stating:

> Based on the record that's before me and I look at the totality of this case dating all the way back to prior to myself taking the bench, prior to the trial, the issues that there has been with competency with [Ryan], how his competency was previously restored and then what brings us to today's date, I reviewed the documents and request that were filed by the doctors …, I am going to order the involuntary administration of medication.

The court made the following findings of fact: that Dr. Kadlec was "qualified" to make the involuntary medication request and "provide the testimony that she did"; that Ryan is "mentally ill," having been diagnosed with schizophrenia; that the second-degree sexual assault of a child charge is a "serious crime"; that the involuntary administration of medication will render Ryan competent to stand trial or assist his attorney at sentencing; that it is "substantially unlikely" Ryan will suffer "side effects that undermine the fairness" of his trial or sentencing; that

7

there are no other available "alternative or less-intrusive treatments" that will achieve "substantially the same results"; and that "the involuntary administration of medication or treatment is medically appropriate."

¶14     Thereafter, the circuit court issued written involuntary medication orders in each of the three cases.  Each order included checked boxes next to statements indicating that the factors set forth in *Sell v. United States*, 539 U.S. 166 (2003), had been proven.  However, neither the court's oral ruling nor its written orders included language addressing the requirements of WIS. STAT. § 971.14(3)(dm).

¶15     Ryan now appeals.

## DISCUSSION

### I. Forfeiture

¶16     Before reaching the merits of Ryan's appeal, we must address the State's argument that Ryan "forfeited all of his claims" because "he did not raise or develop any of them at" the January 16, 2026 hearing.  (Formatting altered.)

¶17     We conclude that the forfeiture rule does not apply to Ryan's challenges on appeal.  First, as a general matter, the State and the circuit court were on notice that Ryan objected to the DHS's motion for involuntary medication.  *See* *State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612.  In fact, the parties held the January 16, 2026 evidentiary hearing because Ryan objected to the involuntary medication motion.

¶18     Relatedly, two of Ryan's challenges on appeal—particularly, his arguments pertaining to the State's failure to meet its burden under WIS. STAT.

8

§ 971.14(3)(dm) and the first *Sell* factor—are properly characterized as sufficiency-of-the-evidence challenges, which cannot be forfeited under these circumstances. *See Waukesha County v. M.A.C.*, 2024 WI 30, ¶67, 412 Wis. 2d 462, 8 N.W.3d 365 (citing WIS. STAT. § 805.17(4)); WIS. STAT. RULE 809.109(2)(h) (stating that when appealing from an order entered pursuant to § 971.14, "[t]he person shall file a motion for postdisposition relief in the circuit court before a notice of appeal is filed *unless the grounds for seeking relief are sufficiency of the evidence* or issues previously raised" (emphasis added)).

¶19 As to Ryan's remaining challenge on appeal, the State fails to provide any authority to support its position that Ryan was required, in order to preserve the issue for appeal, to notify the circuit court and the State that, in his view, the court failed to make the requisite findings of fact under WIS. STAT. § 971.14(3)(dm). The State, not the defense, bears the burden to ensure that the statutory and constitutional requirements for an involuntary medication order are met. As Ryan argues, the defense "is not required to do the [S]tate's job" by eliciting testimony that would establish those requirements or by ensuring the circuit court makes all of the necessary findings to issue an involuntary medication order.

¶20 We are unpersuaded by the State's reliance on *State v. D.E.C.*, 2025 WI App 9, 415 Wis. 2d 161, 17 N.W.3d 67 (2024), to support its position that Ryan forfeited all of his arguments on appeal. In *D.E.C.*, the defendant argued on appeal that the State had failed to meet its burden of proof on the fourth *Sell* factor (that the planned forced administration of medication was medically appropriate) because certain medications recommended in the treatment plan, and/or the proposed dosages of those medications, were inappropriate. *D.E.C.*, 415 Wis. 2d

9

161, ¶¶68, 70-72. To support his arguments, the defendant cited statements from FDA labels, a "prescriber's guide," and a scholarly article. *See **id.*** (formatting altered).

¶21 We explained on appeal that while defense counsel "asked probing questions" of the doctor at the evidentiary hearing concerning some of these issues, counsel did not ask the testifying doctor for her opinions on the statements from the FDA labels, the "prescriber's guide," or the scholarly article. *See **id.***, ¶¶66, 69-71, 73. Therefore, we concluded that without a record of the testifying doctor having an opportunity to "explain her view" of the statements from those materials, we lacked the necessary context or factual basis to consider the defendant's arguments on appeal. *See **id.***, ¶¶69-71, 73.

¶22 Here, Ryan is not challenging the medical accuracy of the testifying doctor's opinions based on evidence that was not presented in the circuit court. Rather, Ryan raises legal arguments rooted in the State's failure to meet its burden as to the first ***Sell*** factor (based on the nature of the charges and the length of his incarceration), the State's failure to meet its burden of proof as to the elements of WIS. STAT. § 971.14(3)(dm), and the circuit court's failure to make the necessary factual findings to satisfy the standards in § 971.14(3)(dm). Accordingly, ***D.E.C.***'s forfeiture holding is entirely inapplicable to this appeal, and we now turn to the merits of Ryan's arguments.

## II. WISCONSIN STAT. § 971.14(3)(dm)

¶23 Before a circuit court orders the involuntary administration of medication in Wisconsin, the State must "make a double showing" under WIS. STAT. § 971.14(3)(dm). ***State v. J.D.B.***, 2026 WI 5, ¶51, 419 Wis. 2d 383, 31 N.W.3d 314. First, the State must prove that the "advantages and disadvantages of

and alternatives to accepting the particular medication or treatment" were explained to the defendant. Sec. 971.14(3)(dm); *J.D.B.*, 419 Wis. 2d 383, ¶51. Second, the State must demonstrate that the defendant is "incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives" *or* that the defendant is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment." Sec. 971.14(3)(dm)1.-2.; *J.D.B.*, 419 Wis. 2d 383, ¶51. The State must make these showings by clear and convincing evidence. Sec. 971.14(4)(b), (5)(am).

¶24 We review a circuit court's statutory findings made pursuant to WIS. STAT. § 971.14(3)(dm) under the clearly erroneous standard. *J.D.B.*, 419 Wis. 2d 383, ¶49. "'[A]s long as the evidence would permit a reasonable person to make the same finding,' it will be affirmed on appeal." *J.D.B.*, 419 Wis. 2d 383, ¶35 (citation omitted).

¶25 Ryan contends that the circuit court never found, either in its oral ruling or its written orders, that Ryan is not competent to refuse medication or treatment under WIS. STAT. § 971.14(3)(dm). The State does not seriously dispute this fact.[4] Based upon our independent review of the transcript of the January 16,

---

[4] Without directly addressing Ryan's arguments to the contrary, the State does assert that "the 'medically informed record' supports the circuit court's conclusion that the State met its burden under WIS. STAT. § 971.14(3)(dm)2." But the State fails to directly address Ryan's arguments by explaining where, precisely, in the record this "conclusion" was made, and our independent review of the transcript of the January 16, 2026 evidentiary hearing and the circuit court's involuntary medication orders leads us to conclude that there is no factual basis for the State's assertion: the court did not conclude that the State met its burden under § 971.14(3)(dm).

11

2026 evidentiary hearing and the circuit court's involuntary medication orders, it is clear that the court never found that Ryan is not competent to refuse medication or treatment under § 971.14(3)(dm). Indeed, the court never referenced the statute or otherwise discussed Ryan's competency to refuse medication or treatment.

¶26 Ryan further argues that we may not affirm the circuit court's orders even if the record supports a finding that the requirements in WIS. STAT. § 971.14(3)(dm)2. were met. Ryan explains that § 971.14 mandates that a circuit court must make the requisite findings therein before ordering the administration of involuntary medication. Specifically, he cites to § 971.14(5)(am), which states, in pertinent part, that "the court shall, under the procedures and standards specified in sub. (4)(b), determine the defendant's competency to refuse medication or treatment for the defendant's mental condition." In turn, § 971.14(4)(b) provides that if

> the defendant is found incompetent and if the state proves by evidence that is clear and convincing that the defendant is not competent to refuse medication or treatment, under the standard specified in sub. (3)(dm), *the court shall make a determination* without a jury *and issue an order that the defendant is not competent to refuse medication or treatment* for the defendant's mental condition and that whoever administers the medication or treatment to the defendant shall observe appropriate medical standards.

(Emphasis added.)

¶27 In addition, Ryan notes that in "actions tried upon the facts without a jury …, the court shall find the ultimate facts and state separately its conclusions of law thereon." WIS. STAT. § 805.17(2). "Ultimate facts" are the elements that must be proven. *See State v. Martwick*, 2000 WI 5, ¶16, 231 Wis. 2d 801, 604 N.W.2d 552. Ryan argues that while § 805.17(2) provides that "[i]f an opinion or

12

memorandum of decision is filed, it will be sufficient if the findings of ultimate fact and conclusions of law appear therein," the circuit court's written involuntary medication orders in this case do not include any language addressing the requirements of WIS. STAT. § 971.14(3)(dm).

¶28    Ryan further emphasizes the importance of following statutory requirements in the involuntary medication context, arguing that "[a]llowing an involuntary medication order to stand—despite [a circuit court] failing to address the mandated statutory requirements—would be far more egregious than simply being perfunctory.  It would render judicial oversight utterly meaningless." *See Outagamie County v. Melanie L.*, 2013 WI 67, ¶94, 349 Wis. 2d 148, 833 N.W.2d 607 (stating, in the WIS. STAT. ch. 51 context, that the government "bears the burden of proof on the issue of competency in a hearing on an involuntary medication order.  These hearings cannot be perfunctory under the law.  Attention to detail is important.").

¶29    For its part, the State does not respond to Ryan's arguments.  Rather, it seemingly assumes, without providing supporting authority, that we may affirm the circuit court's orders—notwithstanding the court never making the necessary findings under WIS. STAT. § 971.14(3)(dm) or even referencing the statute or Ryan's competency to refuse medication or treatment—if the record supports a finding that the statutory requirements were met.  Accordingly, we deem any arguments in support of affirming the court's involuntary medication orders, despite the lack of factual findings under § 971.14(3)(dm), as undeveloped, and we interpret the State's failure to respond to Ryan's substantive arguments to the contrary as a concession.  *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578; *State v. Pettit*, 171 Wis. 2d 627, 646-

47, 492 N.W.2d 633 (Ct. App. 1992) (declining to address undeveloped arguments).

¶30 Independently, this court observes no basis, statutory or otherwise, under which we may affirm the involuntary medication orders absent the circuit court finding that the State proved, by clear and convincing evidence, that the "advantages and disadvantages of and alternatives to accepting the particular medication or treatment" were explained to Ryan *and*, importantly here, that Ryan is "incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives" or that he is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment." *See* WIS. STAT. § 971.14(3)(dm)1.-2.; *see also **J.D.B.***, 419 Wis. 2d 383, ¶53 (affirming a circuit court's involuntary medication order because, in part, the "court made sufficient findings on [§ 971.14(3)(dm)], and the evidence supports the finding that the statutory standards were met"). Given the foregoing, we conclude that we cannot affirm the involuntary medication orders.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14